## IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN

SAMUEL H. HALL, JR.,

                     PLANTIFF          |     CIVIL. NO.

           v.

ELSA HALL,                        |     ACTION FOR DAMAGES
                                           |     AND FOR AN ACCOUNTING

                  DEFENDANT.     |     JURY TRIAL DEMANDED

## COMPLAINT

Plaintiffs Samuel H. Hall, Jr., by and through the undersigned counsel, alleges as follows:

1. This Court has diversity jurisdiction pursuant to 28 U.S.C. Section 1333.

2. Plaintiff Samuel H. Hall, Jr. ("Samuel Hall") is a citizen of the Virgin Islands, residing in St. Thomas, U.S. Virgin Islands, and is the son of Ethlyn Hall.

3. Yassin Hall, is a citizen of Florida and is the granddaughter of Ethlyn Hall and the only child of Victor Hall, son of Ethlyn Hall.

4. Phyllis Hall-Brin, is a citizen of the Virgin Islands, residing at # 156-157 Estate Enighed and Contant, Cruz Bay, St. John, Virgin Islands, and is the daughter of Ethlyn Hall.

5. Defendant Elsa Hall, is a citizen of Florida and is the daughter of Ethlyn Hall.

6. Elsa Hall is named herein individually.

7. Tanya Muldrow is a citizen of the state of Georgia and is the daughter of Phyllis Hall-Brin.

8. Ethlyn Hall ("Ethlyn Hall") was a citizen of the Virgin Islands at the time of her death and is the mother of the Samuel H. Hall, Jr., Phyllis Hall-Brin and Elsa Hall, and the grandmother of Yassin Hall and Tanya Muldrow.

9. She died on May 5, 2012 in Miami, Florida.

10. Ethlyn Hall was moved out of her home at No. 16 Peter Bay, St. John, and eventually to Miami, Florida at a time when she was mentally unable to make an informed decision about her domicile or care due to the undue influence of Elsa Hall.

11. In 1975, Estate Peter Bay, St. John was partitioned into 1/6th shares. Ethlyn Hall received approximately eight acres as a result of the partition.

12. Ethlyn Hall received from the partition approximately 1.5 acres in lower Peter Bay (Parcel 16) and approximately six acres in Upper Peter Bay (Parcel 17).

13. Ethlyn Hall's Peter Bay property was in addition to the Cruz Bay property she and Samuel Hall, Sr. owned, known as Parcel No. 156-157 Estate Enighed and Contant.

14. For over 30 years, starting in the 1970's, Samuel Hall provided legal and other assistance for Ethlyn Hall without seeking or obtaining any compensation o remuneration in the form of money or property.

15. In 1970's, when Samuel Hall, Sr. and Ethlyn Hall divorced, Samuel Hall was designated by their divorce court judge, in accordance with the agreement of his mother and father, to oversee the allocation of net rental income from their Cruz Bay property between them, and he did so voluntarily and without any financial compensation or remuneration.

16. In 1981, when Samuel Hall, Sr. agreed to sell his one-half interest in the Cruz Bay property to Ethlyn Hall, Samuel Hall cosigned the bank loan of Ethlyn Hall allowing her to purchase his one-half interest.

17. During the 1980-1990's, St. John Land Investment Limited sought to collect from Ethlyn Hall 1/6th the cost of constructing a concrete subdivision road with underground utilities, security gate and gate openers, roadside stonework and landscaping in lower Peter Bay.

18. The cost of said work was several hundred thousand dollars if it was not in excess of $1 million.

19. Through the legal efforts of Plaintiff Samuel Hall, Ethlyn Hall did not have to pay for any of the cost of the roadwork.

20. Samuel Hall, on behalf of Ethlyn Hall was successful in discouraging St. John Land Investment from attempting to collect from her 1/6th of the cost of the work.

21. If Ethlyn Hall had been forced to pay 1/6th the cost of the work, she would have been forced to sell some of her property in order to do so.

22. In the 1980's, Samuel Hall assisted his mother in the construction of her house at Parcel 16 by providing her with construction materials and equipment from St. Thomas at no cost to her.

23. In 1990, when Victor Hall attempted to adversely possess his mother's property in lower Peter Bay, Samuel Hall successfully sued to evict Victor Hall on behalf of Ethlyn Hall and successfully defended Ethlyn Hall from his adverse possession claim in the Territorial Court F.E.D. No. 218/1990 and in the District Court App. Div. Misc. No. 1990-18.

24. In 1990, Samuel Hall recommended that Ethlyn Hall place her Cruz Bay property in her name along with that of Elsa Hall and Phyllis Hall as joint tenants in order to provide them with economic security.

25. When Ethlyn Hall asked if he should be included, he declined to be included on the deed.

26. On April 25, 1990, at the recommendation of Samuel Hall, and with his legal assistance in preparing the deed, Ethlyn Hall, conveyed by quitclaim deed her seven dwelling unit guest house doing business as Hillcrest Guest House ("Hillcrest Guest House"), located

on Parcel No. 156-157 Estate Contant and Enighed, St. John, to herself, Phyllis and Elsa, as joint tenants, reserving for herself, however, a life estate in all rents and profits.

27.  Ethlyn Hall did this in order to provide a home and shelter to Elsa Hall and Phyllis Hall, who had failed to purchase or otherwise acquire real property or a house of their own, while at the same time preserving her right to the guest house income in case she needed it.

28. Ethlyn Hall also allowed Phyllis Hall-Brin to live at the Hillcrest Guest House in a three bedroom apartment rent-free since April 25, 1990 on condition that she manage the rental of the guest house and provide her with the net income.

29. However, after the conveyance, Phyllis Hall-Brin failed to continue to provide her mother with her portion of the net income.  Instead, except for paying the telephone and light bill for her mother's home at No. 16 Estate Peter Bay, Phyllis Hall Brin kept the net income for her own use.

30. Ethlyn Hall complained about Hall-Brin's actions in converting the rental income from the Hillcrest Guest House to her own personal use.

31. In 1999, Defendant Elsa Hall asked her mother to convey to her property in Estate Peter Bay, St. John.

32. In June 1999, after her mother agreed to give Defendant Elsa Hall one acre, Samuel Hall prepared a quit-claim deed at the request of his mother, in order to cause Elsa Hall to quit-claim her interest in the seven dwelling unit guest house (Hillcrest Guest House), and to receive in exchange a deed of gift from Ethlyn Louise Hall to approximately an acre in Estate Peter Bay.

33. By deed dated June 4, 1999, Elsa Hall quit-claimed to Ethlyn Hall and Phyllis Hall Brin her interest in the Hillcrest Guest House.

34. After obtaining the acre, Elsa Hall was unsuccessful in operating a landscaping business on the property, and eventually discontinued the landscaping business.

35. She was also unsuccessful in operating a campground on the property

36. She has also been unsuccessful in remaining gainfully employed by others for any significant length of time.

37. In 1999, Elsa Hall also asked Samuel Hall to incorporate a business she called Botanical Villas, Inc. in order to operate a campground on her property, and he incorporated it for her at no cost to her for his services.

38. Elsa Hall also asked Samuel Hall to co-sign a truck loan for her and he did that too.

39. However, the buildings Elsa Hall built on her property were plywood shanties, not botanical villas, and were not been kept clean and safe.

40. This caused them to receive highly unfavorable guest reviews, which appear online at www.tripadvisor.com when a search for "St. John Botanical Villas" is conducted.

41. In 1999, in exchange for the deed to one acre, Elsa Hall quit-claimed and relinquished her interest in the Hillcrest Guest House in order to obtain the first of two adjacent acres of land she received from her mother in Estate Peter Bay, St. John.

42. In 1990, St. John Land investment Limited desired to construct a concrete subdivision road, stonework, landscaping, security gate and gate opener in Upper Peter Bay, with the road work to be done in the location established by the 1975 partition decree pursuant to which Ethlyn Hall obtained titleto her Peter Bay property.

43. Instead of seeking to have Ethlyn Hall pay 1/6th of the cost, St. John Land Investment, Ltd. agreed, in exchange for Samuel Hall on behalf of Ethlyn Hall obtaining the CZM permits to build the concrete road, stone walls, and landscaping, to perform the roadwork without requiring Ethlyn Hall to pay 1/6th of its cost.

44. If Ethlyn Hall had been forced to pay 1/6th the cost of the work, she would have been forced, as a retiree, to sell some of her property in order to do so.

45. The cost of said roadwork was several hundred thousand dollars if it was not in excess of $1 million.

46. Samuel Hall also retained the services of architect John Woods to design the subdivision road in Upper Peter Bay and paid for the architectural services himself.

47. On December 13, 1999, Samuel Hall applied for minor CZM permit on behalf of his mother to construct portion of Subdivision road in Upper Peter Bay pursuant to a power of attorney from his mother authorizing him to do so.

48. Neither Ethlyn Hall nor any of her children, except for Samuel Hall, or her grandchildren paid for any of the cost of the roadwork in Upper Peter Bay.

49. On November 17, 2000, Samuel Hall applied for another CZM permit on behalf of Ethlyn Hall in order to permit to construct another portion of the subdivision road in Upper Peter Bay, pursuant to a power of attorney given to him by Ethlyn Hall.

50. The roadwork cost hundreds of thousands of dollars if not more than $1 million.

51. Through the efforts of Samuel Hall, Ethlyn Hall paid none of the cost of the roadwork.

52. In addition, in 2001, Samuel Hall, on behalf of Ethlyn Hall, also arranged for the exchange of easements and of substandard parcels owned by Ethlyn Hall (Parcel 17-B and 17-3) for a larger, substandard parcel owned by St. John Land Investment (Parcel 15-

7), so that each party obtained a substandard parcel that, when added to their remaining property, enhanced its value.  In addition, the substandard parcel Ethlyn Hall received was larger and more valuable than the substandard parcels she gave up in exchange.

53. Ethlyn Hall also obtained from St. John Land Investment, Ltd. at no cost to her, through the assistance of Samuel Hall, a contractual commitment to construct an additional concrete access road to her property, of similar construction as the concrete subdivision road, and the access road was constructed as agreed.

54. In 1998 or 1999, through 2002, Samuel Hall also successfully represented his mother in the case of *Peter Bay Homeowners Association v. Stillman, et. al*., a lawsuit filed in the District Court of the Virgin Islands, in order to protect Ethlyn Hall from the claim of the Peter Bay Homeowners Association that its members had a 50 foot easement over her beachfront property (Parcel 16) in lower Peter Bay, and from their claim that she was obligated to be a dues-paying member of the Association.

55.  In 2002, he also successfully represented his mother on appeal of the case to the U.S. Court of Appeals for the Third Circuit.

56. Starting in 2001, Samuel Hall also assisted Ethlyn Hall in subdividing her property in upper Peter Bay, after the concrete road and other road improvements were completed.

57. He accomplished the subdivision at considerable cost, time and expense to himself, including paying for the engineering and surveying costs himself.

58. On or before April 2002, with the legal assistance of Samuel Hall, after he completed the subdivision of Parcel 17 after considerable expenditure of his own time, money and effort, Ethlyn Hall conveyed by deed of gift the second of two acres in Estate Peter Bay to Elsa Hall (Parcel 17-2), an acre, more or less, to her daughter Phyllis Hall Brin (Parcel

17-4), an acre, more or less, to her son (Parcel 17-5); and caused the conveyance of an acre, more or less, to her granddaughter, Yassin Hall (Parcel 15-7 and 17-6).

59. Samuel Hall did not seek or obtain a gift of any property from his mother beyond the one acre parcel she decided to give him.

60. In 2002 and 2003, Samuel Hall, on behalf of Ethlyn Hall, without any cost to her, also negotiated with John ("Jack") Andrews a long-term ground lease on a one acre parcel known and described as Parcel No. 17-7 Estate Peter Bay.

61. In exchange for the construction of two cottages, one on the property of Phyllis Hall Brin and one on the property of Yassin Hall, Andrews was to receive a 50 year ground lease to an unimproved acre of land known as Parcel 17-7.

62. On January 24, 2003, the Ground Lease to Parcel 17-7 was executed between Ethlyn Hall and the Andrews St. John Trust ("Andrews").

63. Samuel Hall did not ask for or seek to obtain any benefit from the Ground Lease he successfully negotiated, or receive any financial compensation or remuneration for conceiving of and successfully negotiating the Ground Lease.

64. Ethlyn Hall greatly appreciated the continued efforts of her son on her behalf and on behalf of the family.

65. Although initially the construction of cottages under the Ground Lease for Elsa Hall and Phyllis Hall-Brin were recommended by Samuel Hall to his mother, Ethlyn Hall, she decided that Elsa Hall had already received enough from her, having been given approximately two acres, one more acre than anyone else, and the two acres were more valuable than one acre with a cottage.

66. Ethlyn Hall decided that the two cottages were to be built by Andrews for Phyllis Hall-Brin and Yassin Hall, the only child of Ethlyn Hall's deceased son, Victor Hall, on their respective parcels.

67. On March 2003, Andrews made a separate proposal to Elsa Hall to develop her property and build cottages on her property but she rejected it.

68. After the Ground Lease was executed, Elsa Hall insisted to her mother that she should get a cottage and eventually caused her mother to request from Samuel Hall by letter dated April 23, 2003, that she be provided with a cottage, which would have required amending the Ground Lease and extending its term.

69. However, Andrews was not agreeable to amending the Ground Lease to extend its term in order to build a third cottage.

70. Elsa Hall became upset with Samuel Hall for not obtaining for her a cottage free of cost to her under the Ground Lease and stopped speaking to him in 2003.

71. Elsa Hall then listed her property for rent under a long-term lease but was unable on her own to obtain a tenant.

72. Subsequently, Elsa Hall listed her property for sale, but was unable to obtain a buyer until June 2012, approximately one month after her mother passed away, and she sold it at a significantly reduced price.

73. Elsa Hall has continually exploited her mother's resources for her own care.  In fact, she attempted unsuccessfully, after Ethlyn Hall had died on May 5, 2012, but before she was buried on May 26, 2012, to remove the lis pendens Samuel Hall placed on the property of Ethlyn Hall in 2011 in order to protect it from Elsa Hall and the Trust, while he sought the appointment of a guardian for his mother.

74. Elsa Hall was then forced to sell her own property within days after the passing of her mother, because she could no longer rely on her mother's income for support.

75. Ethlyn Hall was born on June 6, 1916 in St. John, Virgin Islands and died on May 5, 2012 and was 95 years old  at the time of her death.

76. Prior to August 11, 2010, Ethlyn Hall lived in her two story, two dwelling unit, beachfront home located at No. 16 Peter Bay, St. John, Virgin Islands.

77. Prior to August 11, 2010, Ethlyn Hall was looked after by Samuel Hall and he provided her with assistance besides legal assistance over a period of many years.

78. He took her to the doctor, the St. John clinic, St. Thomas hospital and other places, bought her groceries, cleaned her yard, fixed her driveway, installed fans in her house, maintained her home, bought her appliances, built her a storage shed, picked up her mail, made her bank deposits, obtained for her direct deposit of her retirement income, saw to her medical care and also represented her in lawsuits and assisted her in subdividing, leasing, conveying and distributing her real property in accordance with her wishes.

79. Prior to August 11, 2010, Elsa Hall did not provide for the care of Ethlyn Hall, despite her mother's generosity towards her.  Instead, she depleted her resources by spending her money, eating her food, occupying her residence and requested and obtained funds from her to live, repair her truck and to travel to and from Florida.

80. Whenever Elsa Hall was in St. John, she lived in the home of Ethlyn Hall, slept on her couch, ate her food, and sometimes occupied her downstairs apartment.

81. Elsa Hall also rented out the downstairs apartment of Ethlyn Hall on a short-term basis, from time to time, in order to obtain income for herself.

82. On or about August 11, 2010, Elsa Hall removed Ethlyn Hall from her home at No. 16 Peter Bay in order to isolate her from Samuel Hall and Yassin Hall.

83. On or about August 11, 2010, Samuel Hall and Yassin Hall went to the home of Ethlyn Hall and found it vacant and devoid of her personal effects, and did not know where she was or whether she had passed away.

84. When Ethlyn Hall was moved into a unit in the Hillcrest Guest House inCruz Bay in August 2010, Elsa Hall moved in with her and slept in her apartment, ate her food and spent her money. She also depleted her savings.

85. After August 11, 2010, Elsa Hall rented out her mother's two dwelling unit home at No. 16 Peter Bay. Upon information and belief, the income derived from the rental of Ethlyn Hall's two dwelling unit home at No. 16 Peter Bay was not utilized exclusively for Ethlyn Hall's benefit.

86. Thereafter, she moved her mother to Miami, Florida without the prior knowledge of Samuel Hall or Yassin Hall and concealed from them her telephone number, address and whereabouts until the day Ethlyn Hall died.

87. In Miami, Elsa Hall continued to live off of the income and assets of Ethlyn Hall until the day she died.

88. Phyllis Hall-Brin, after benefiting from the love of Ethlyn Hall turned her back on her mother after she received: (a) a half interest in the Hillcrest Guest House in which she has lived rent free since 1990 and from which she has kept rental income to which Ethlyn Hall is entitled; (b) a one acre parcel of land in Estate Peter Bay known and described as Parcel 17-4 Peter Bay; and (c) the right to have a cottage built by Andrews on her Parcel 17-4.

11

89. Phyllis Hall-Brin turned away from her mother just as or shortly after construction began on her cottage in early 2006.

90. On October 13, 2006, after Phyllis Hall Brin continued to neglect her mother, Samuel Hall sent an email to her and several other members of the family requesting that they provide Ethlyn Hall with attention, care and assistance.

91.  Despite receipt of that communication, Phyllis Hall Brin continued to keep her mother's income from Hillcrest House, ignore her care and welfare, and failed to allow her to use a dwelling unit in the Hillcrest Guest House. For a long period of time she did not communicate with her mother, including on Christmas, Thanksgiving, Valentine's Day, Easter, or her birthday.

92. Phyllis Hall Brin also stopped speaking to Samuel Hall and his wife after she was urged as the only child of Ethlyn Hall who at the time resided on St. John full-time, to look out for her mother's well-being and care.

93. Phyllis Hall-Brin, who is retired and lives on St. John, did not even show up when EMTs called her about her mother's illness after her mother had called for an ambulance.  The EMTs waited with Ethlyn Hall at her home until Samuel Hall and his wife arrived on St. John from St. Thomas.

94. On another occasion, while Samuel Hall was on the U.S. Mainland in May 2009, Phyllis Hall Brin refused to pick up her mother at the St. John clinic until she was told by the clinic staff that her mother had to be released to a family member not to the non-family member Samuel Hall arranged from the mainland to pick her up.

95. On March 5, 2007, by email, Samuel Hall reminded Phyllis Hall-Brin, even as her mother's Ground Lease was funding the construction of her cottage, of the need for her to

contact and communicate with her mother.  He informed her by email that all her mother needed is a once-a-week phone call for just 15 minutes.

96. Notwithstanding this reminder, the continued generosity of her mother and her mother's forbearance from seeking more aggressive measures to ensure that Phyllis Hall Brin turned over to her the rental income that was due to her, Hall Brin continued to ignore the welfare of her mother, and failed to visit her or call her once-a-week.

97. She did not visit her mother, assist her in obtaining groceries, return her phone calls or otherwise honor her mother.

98. Thus, on and before August 3, 2007, Ethlyn Hall decided to discontinue funding a cottage for Phyllis Hall Brin, who was not taking care of her, and decided instead to reprogram the funds towards construction of the house of Samuel Hall, who was taking care of her.

99. On August 3, 2007, Ethlyn Hall voluntarily signed a statement addressed to whom it may concern, with full knowledge of  what she was doing, reprogramming the funds under the Ground Lease from the property of Phyllis Hall to the property of Samuel Hall, while authorizing him to complete the construction on the property of Yassin Hall.

100. On August 4, 2007 she signed a Power of Attorney and an Assignment, giving him complete authority over the Ground Lease in order to successfully complete the construction of the house of Yassin Hall and to assist in the completion of his own house, and to see to the future development of Parcel 17-7, which he did.

101. In August 2007, Ethlyn Hall was pleased that her son had taken care of her through the years and was willing to continue to take care of her in the future and undertake the completion of the home of Yassin Hall.

13

102.     Ethlyn Hall, at the time she signed those documents, was pleased that she was able to assist her son financially, for the first time since he graduated from law school in 1975 instead of the other way around.

103.     In 2004, Samuel Hall began construction with his own funds of his own home in St. John on the property given to him by his mother in 2002.  At the time he began construction of his home, and until Phyllis Hall failed to look after their mother, he never sought or obtained any financial assistance from Ethlyn Hall to complete his home on Parcel 17-5.

104.     Prior to August 3, 2007, Samuel Hall was not a beneficiary of the Ground Lease he successfully negotiated on behalf of his mother with Andrews for the benefit of Phyllis Hall-Brin and Plaintiff Yassin Hall.

105.     He became a beneficiary only after his sister failed for a long period of time to honor her elderly mother, and converted substantial rental proceeds due to her mother from the Hillcrest Guest House for Hall-Brin's own personal use and benefit.

106.     For a period of almost two years thereafter the reprogramming of the funds from the Ground Lease, Phyllis Hall Brin continued to ignore her mother's welfare, and avoided communicating with Samuel Hall.

107.     Then on June 8, 2009, Phyllis Hall Brin wrote an email accusing Samuel Hall of failing to see to the construction of her cottage.

108.     In response, Samuel Hall chastised her in a reply email for not taking care of her mother, ignoring her at Christmas, birthdays and other holidays, and confirmed why, due to her neglect of her mother, her cottage's construction was halted back in 2007.

109.     Phyllis Hall Brin never responded to the email of Samuel Hall.  Instead, she

sought unsuccessfully to have her mother reprogram funds back to the construction of her

cottage, which her mother refused to do.

110.     Phyllis Hall Brin continued to keep the rent from the seven dwelling units at

Hillcrest Guest House to which her mother was legally entitled.

111.     Even as her mother deteriorated physically and mentally, she continued to keep

her rental income, and ignore her needs.

112.     In March 2010, Ethlyn Hall complained to her son, Samuel Hall that Phyllis Hall

would not let her stay in an apartment in the Hillcrest Guest House, was stealing her

money and was coming into her home at night and had stolen her Bible.

113.     On March 22, 2010, Ethlyn Hall asked her son to prepare a letter for her signature

asking Phyllis Hall-Brin, beginning with the month of April, to send her a written

monthly report of revenues and expenses along with a check for 50% of the net income

by the 15th of the following month and on the 15th day of each month thereafter.

114.     Phyllis Hall- Brin never responded to the March 22, 2010 letter from her mother.

115.     Phyllis Hall-Brin failed to provide Ethlyn Hall with any written monthly reports

from the operations at the Hillcrest Guest House.  Instead, she continued to keep her

mother's income.

116.     Over a period of years, Phyllis Hall Brin and Elsa Hall have depleted their

mother's savings and resources without materially helping to improve her lot in life or

provide for her care and comfort.

117.     Elsa Hall represented to her mother that she needed money for various things and constantly asked her to send her money while she was living in Florida.  She also asked her to sign social security documents in blank so she could obtain disability benefits.

118.     Her mother also provided funds for Elsa to improve her property, and on occasion gave her the rent from her downstairs apartment at No. 16 Peter Bay or its furnishings for her use or for the use of guests of her Botanical Villas.

119.     As long as Ethlyn Hall was physically healthy and mentally sound, she was able to keep Elsa Hall and Phyllis Hall at bay.   However, as she got older, she began to physically and mentally deteriorate and become paranoid.  Ethlyn Hall was frail, infirm and of failing mind and body due to her advanced age and health. She was not capable of making decisions concerning her affairs because of failing memory, dementia and paranoia and the ease with which she may be unduly influenced.

120.     In late 2009, she began to imagine people coming into her house in the middle of the night, including Phyllis Hall, to steal her Bible, steal her money and take her property.

121.     In 2010, she complained repeatedly to her son, Samuel Hall, that she was not right in the head.

122.     Sometimes she would sleep in a chair by the door at night with a string around the doorknob to keep out intruders.

123.     Sometimes she would ask to sleep in Samuel Hall's home in St. John and did so on occasion in order to feel safe.  Sometimes she also stayed during the week in his house on St. Thomas, where he encouraged her to stay during the week, but she frequently declined to do so.

124.    In August 2010, Ethlyn Hall was no longer able, physically and mentally, to keep Elsa Hall and Phyllis Hall at bay.  As a result, they were able to move her out of her home at No. 16 Peter Bay on the pretense that they were going to paint it and return her to it.  Instead, they took her furniture for their own purposes and rented out her house from under her for their own purposes.

125.    Elsa Hall and Phyllis Hall put Ethlyn Hall in a dwelling unit in the guest house that Phyllis Hall Brin had long denied her access to and continued to keep her rent from the remaining units.

126.    Elsa Hall and Phyllis Hall caused her to sleep on a futon instead of in her own queen size mahogany bed.

127.    Elsa Hall and Phyllis Hall also duped Ethlyn Hall  into thinking that she no longer had a place to stay in St. John.

128.    In order to accomplish their objectives, Elsa Hall, Phyllis Hall and Tanya Muldrow conspired to isolate their mother from her son, Samuel Hall, and her granddaughter, Yassin Hall, and others.

129.    In August 2010, Elsa Hall and Phyllis Hall took Ethlyn Hall, from her home at No. 16 Peter Bay without the knowledge or consent of Samuel Hall and Yassin Hall.

130.    Within days after moving her mother out of her home, Elsa Hall posted her house for rent on her Botanical Villas website.

131.    In August 2010, Samuel Hall and Yassin Hall traveled to No. 16 Peter Bay in order to let Ethlyn Hall know that Yassin Hall was returning to Florida and discovered that the home of Ethlyn Hall had been stripped of furniture, and other contents and all of her personal effects.

17

132.     Samuel Hall and Yassin Hall also discovered on that day that the downstairs apartment of Ethlyn Hall had been rented out by Elsa Hall to two University of the Virgin Islands students.

133.     Elsa Hall also took the storage shed of Ethlyn Hall on Parcel 16 that Samuel Hall had built for her, and moved the shed onto the beach and attempted to rent it out as living accommodations without amenities such as running water, electricity, toilet facilities, certificate of occupancy or CZM approval.

134.     Elsa Hall and Phyllis Hall also made it difficult for Samuel Hall to locate and speak with his mother.  Without his knowledge, they moved her into one of her apartments in the Hillcrest Guest House where she had been previously denied access by Phyllis Hall-Brin.  They located her in an apartment behind a cyclone fence, which was inaccessible by visitors without encountering Rottweilers of Phyllis Hall-Brin.

135.     Then Elsa Hall wrote letters to Samuel Hall which she caused his mother to sign without her understanding or appreciating their significance, demanding money and making assertions Elsa Hall knew to be false.

136.     No such letters or demands for money were ever written or sent to Samuel Hall by his mother prior to Elsa Hall and others moving her out of her home in August 2010, where she was not isolated from anyone.

137.     Elsa Hall and Phyllis Hall caused their mother to reject $4,767.42 sent to her by Samuel Hall, made payable to the Virgin Islands Bureau of Internal Revenue, to help pay her property taxes after she had requested the money from him in a telephone call. Instead, they wanted the check made out to her so that they could get her to endorse it and then spend it for their own benefit.

138.     In addition to sending Samuel Hall letters purporting to be from his mother, Elsa Hall  created an email address through which  she sent email to Samuel Hall purporting to be from Ethlyn Hall.

139.     The email address Elsa Hall created purporting to be Ethlyn Hall is the email address  ethlynhall@yahoo.com.

140.     Elsa Hall created this email address, not Ethlyn Hall, because Samuel Hall's 95 year old mother could not type, did not know how to use a computer, create an email address or send email.

141.     In August 2010, Elsa Hall and Phyllis Hall grabbed their mother from her home in which she had lived for over 20 years, isolated her from Samuel Hall and Yassin Hall and by November 2010 caused her to transfer her property into a Trust for such purposes as they wished.

142.     They did this without the knowledge or consent of Samuel Hall or Yassin Hall.

143.     Prior to creation of the Trust, Ethlyn Hall owned and lived in her home Parcel No. 16 Estate Peter Bay, St. John.

144.     Prior to the creation of the Trust, she owned Parcel No. 17-7 Estate Peter Bay.

145.     In November 2010, three months after Ethlyn Hall was isolated from her son and Yassin Hall, and without their knowledge or consent, Elsa Hall, Phyllis Hall and Tanya Muldrow caused the creation of the Trust into which they caused Ethlyn Hall, through the exercise of undue influence, to transfer her assets in order to benefit individuals they wished to benefit.

146.     At the time the Trust was executed by Ethlyn Hall, Defendant Elsa Hall enjoyed a confidential relationship with Ethlyn Hall.

147.     On April 22, 2011, Samuel Hall first learned of the Trust when he received from Attorney Andrew Simpson ("Simpson") a draft of the complaint he proposed to file.

148.     Although Simpson disclosed the existence of the Trust in the draft complaint, he sought to conceal on behalf of Elsa Hall the terms of the Trust.

149.     On _____, Simpson misrepresented to the District Court in a case related to this one (Hall v. Hall, D. Ct. Civil No.__) that Samuel Hall was a beneficiary of the Trust.

150.     On _____, over the objection of Plaintiff, the District Court reviewed the Trust in camera for the purpose of determining jurisdiction over the parties.

151.     Plaintiff never saw the Trust until _____, 2013, when it was produced by Simpson for the first time.

152.     That tortious interference was discovered in January 2013 when Plaintiff was provided with a copy of the Will and the Trust.

153.     The effort of Defendant to deny Plaintiff his inheritance through her wrongful conduct was discovered in January 2013 when Plaintiff was provided with a copy of the Will and the Trust by Simpson as required by the Federal Rules of Civil Procedure.

154.     At that time, Plaintiff learned that the Will and Trust executed by his mother and subsequently amended further in Florida excluded him and Yassin Hall as beneficiaries of Ethlyn Hall and through discovery in that case learned that Defendant Elsa Hall had abused and misused her relationship with Ethlyn Hall to take possession of all of her real and personal property.

155.     In discovery, Plaintiff learned that Defendant Hall obtained long-term leases to the property of Ethlyn Hall, possession of her rent, savings and checking account, and in her name sought to sell all of her property within months of moving her to an undisclosed

location in Florida.

Elsa Hall subsequently continued to conceal the whereabouts of Ethlyn Hall from Samuel Hall and Yassin Hall.

156.     Elsa Hall never disclosed to him or Yassin Hall before she moved Ethlyn Hall to Florida that she had arranged for Ethlyn Hall to execute the Trust.

157.     After the death of Victor Hall, Ethlyn Hall's youngest son, in an ongoing effort to isolate her from Samuel Hall, Yassin Hall and others, Elsa Hall also caused Ethlyn Hall to faint in March 2011 by moving her into plywood shanties that exist without modern amenities at Botanical Villas, the property owned by Elsa Hall, causing her to need medical care at the St. John clinic.

158.     As a result of the efforts of Elsa Hall, Phyllis Hall Brin and Tanya Muldrow to deny him access to his mother, the last time Samuel Hall saw and spoke to his mother before she died on May 5, 2012 was at the St. John Clinic in March 2011.

159.     After learning his mother was in the Myrah Keating Smith Clinic in St. John, Samuel Hall immediately went to the clinic along with his wife to see his mother.

160.     At the clinic, he talked with his mother about the passing of his brother; whether his brother suffered from the same illnesses as his father, and her need to eat whether she felt like it or not.

161.     As always, Ethlyn Hall, whenever she saw Samuel Hall, was happy to see him and never raised any issues with him concerning his care of her, the Ground Lease, or the construction of improvements on his parcel or that of Yassin Hall, or any other matter relating to property or assistance.

162.    Ethlyn Hall was also happy to see Diana Hall, the wife of Plaintiff Hall, who had been like a daughter to her, took care of her and Ethlyn Hall never raised any issues with her at the hospital.

163.    The last time Samuel Hall saw his mother alive was at the Myrah Keating Smith Clinic in St. John.

164.    In early April 2011, Elsa Hall prevented Yassin Hall from visiting her grandmother while she was on St. John for the funeral of her father, Victor Hall.

165.    Elsa Hall hid Ethlyn Hall from Yassin Hall because she was afraid that Yassin would learn of the creation of the Trust in November 2010, and the exploitation of her resources, and of the plans to move Ethlyn Hall to Florida.

166.    As a result of the efforts of Elsa Hall, Yassin Hall never saw or spoke to her grandmother again.

167.    Yassin Hall did not even see Ethlyn Hall at the funeral of her father, Victor Hall, because Elsa Hall did not allow Ethlyn Hall to attend the funeral and actively sought to prevent Yassin Hall from visiting her mother while in St. John for her father's funeral.

168.    Yassin Hall was denied the opportunity to see and speak to her grandmother in person in August 2010, April 2011 and again in October 2011.

169.    Not only did Elsa Hall and Phyllis Hall Brin not attend the funeral of their brother, Victor Hall, in April 2011, or assist in the cost of his burial, they kept Ethlyn Hall from the funeral services for her son, which was held in St. John on April 4, 2011.

170.    Nor did Elsa Hall or Phyllis Hall Brin attend the funeral of Ethlyn Hall on May 26, 2012, which was also held on St. John, or assist in paying for the cost of her burial or the construction of her vault.

171.     Phyllis Hall Brin lives in St. John just up the hill from the Lutheran Church where the funeral services for Ethlyn Hall were held.

172.     In May 2011, after they moved Ethlyn Hall to Florida, Elsa Hall took advantage of Ethlyn Hall's  failing memory, dementia and paranoia and used her undue influence over her and caused her to authorize this lawsuit against Samuel Hall.

173.     Elsa Hall found Andrew Simpson, the lawyer who filed this suit, and arranged for him to meet with Ethlyn Hall.

174.     From April 2011 until May 5, 2013, Ethlyn Hall lived in Miami, hidden from Yassin Hall and Elsa Hall until the day she died.

175.     Due to her mental and physical infirmity, she could not walk or otherwise leave her apartment or contact Samuel Hall or Yassin Hall.

176.     Before she died, Elsa Hall also caused Ethlyn Hall to execute a Last Will and Testament on June 3, 2011, giving all of her rest to the Trust, and appointing Elsa Hall and appointing her Personal Representative under the Will.

177.     Elsa Hall lived with Ethlyn Hall at the time the Will was signed by Ethlyn Hall, in the same Miami dwelling as Ethlyn Hall, relied on the income from Ethlyn Hall for her own existence, and utilized the resources of Ethlyn Hall as she saw fit.

178.     At the time the Will was executed by Ethlyn Hall, Elsa Hall enjoyed a confidential relationship with Ethlyn Hall.

179.     Plaintiff Hall first learned of the Will on or about January 21, 2013, when he received the motion for leave to amend the complaint and the proposed First Amended Complaint filed in this action (Doc. Nos. 32 and 33).

180.     Ethlyn Hall lacked the mental capacity to change her domicile from the Virgin

Islands to Florida, or to sign the Trust or the Will.

181.     Plaintiff Hall also learned for the first time from paragraph 12 the proposed

amended complaint that Elsa Hall filed a probate action in Miami to probate the will in

Florida.

182.     Elsa Hall never gave to Plaintiff Hall or to Yassin Hall, as the heirs at law and

next of kin of Ethlyn Hall, notice of her efforts to probate the Will.

183.     Had Plaintiff Hall not challenged the survivability and assignability of tort claims

of Ethlyn Hall to the Trust, the proposed First Amended Complaint would not have been

filed and he would never have been informed by Elsa Hall of the existence of the Will or the

effort by Elsa Hall to probate the Will in Florida.

184.     Elsa Hall also asked others to conceal from Samuel Hall the existence of the Trust

and the Will, and the whereabouts of Ethlyn Hall.

185.     Yassin Hall resides in Florida, where her grandmother Ethlyn Hall was taken, but

Elsa Hall, Phyllis Hall Brin and Tanya Muldrow  failed to notify her of her grandmother's

whereabouts in Miami and  prevented Yassin Hall from having any contact with her

grandmother even though both were located in Florida.

186.      After a guardianship action was filed in the Family Court in St.Thomas in April

2011 by Yassin Hall and Samuel Hall, seeking the appointment of a guardian for Ethlyn Hall,

Elsa Hall and Phyllis Hall Brin opposed the appointment of a guardian.

187.      On October 5, 2011, Yassin Hall appeared in the Family Court and learned from

the Family Court judge exactly where her grandmother was being kept in Miami by Elsa

Hall.

188.    On October 5, 2011, after appearing in Family Court in St. Thomas and after discovering in Family Court where her grandmother was being kept in Miami by Elsa Hall, Yassin Hall travelled to Miami on October 5, 2011 and attempted to see her grandmother but Elsa Hall prevented her from doing so by refusing to open the apartment door of the apartment of Ethlyn Hall.

189.    On October 5, 2011, in the presence of witnesses, Elsa Hall refused to open the door to Ethlyn Hall's apartment to let Yassin Hall see or speak to her invalid grandmother.

190.    On October 5, 2011, Elsa Hall also called the police to arrest Yassin Hall rather than let her see her grandmother, but they declined to arrest her.

191.    Since April 2011, and until she passed away on May 5, 2012,  Plaintiff Samuel Hall and Yassin Hall were denied the ability to call Ethlyn Hall, visit her, wish her Happy Birthday or Happy Mother's Day or to determine whether she was properly being cared for. However, Elsa Hall, Phyllis Hall and Tanya Muldrow knew exactly where she was being kept and how to reach her.

192.    Elsa Hall also failed to timely notify Samuel Hall and Yassin Hall of the death of Ethlyn Hall, leaving it to them to be notified by a friend who discovered it on Facebook.

193.    Elsa Hall also attempted to deny Samuel Hall and Yassin Hall any involvement in the burial arrangements for Ethlyn Hall even though Elsa Hall and PhyllisHall Brin had no intention of attending and did not attend her funeral.

194.    After Samuel Hall learned of the death of Ethlyn Hall, and offered Tanya Muldrow financial assistance with the burial costs, Tanya Muldrow threatened to cremate the remains of Ethlyn Hall unless Samuel Hall also paid for a burial vault for Ethlyn Hall, after he had already paid the funeral home for its services.

25

195.     That threat was made for solely for the purpose of intentionally causing him emotional distress, and to permit Elsa Hall, Phyllis Hall Brin and Tanya Muldrow to avoid paying any of the burial costs of Ethlyn Hall.

196.     Elsa Hall individually plotted and planned and conspired to exercise dominion, control and ownership of Ethlyn Hall and her assets and her remains after using her undue influence on her while she was alive, and after isolating her while she was physically and mental deteriorating, and incapable of taking care of herself and her affairs.

197.     Elsa Hall was not motivated by love for Ethlyn Hall but by greed.

198.     Elsa Hall and Phyllis Hall did not provide for the care of Ethlyn Hall prior to grabbing her and taking her out of her home in August 2010 just as they did not provide, attend to, care for, or honor their father during the last years of his life until he died in 2004,or provide for Ethlyn Hall after they took her out of her home in August 2010, except out of her own funds and income.

199.     Elsa Hall and Phyllis Hall took advantage of Ethlyn Hall for their own economic benefit.

200.     Purporting to act in the name of Ethlyn Hall, they attempted to obtained the construction funds under the Ground Lease which were allocated by Ethlyn Hall to the improvements to be made to Parcel 17-5 belonging to Samuel Hall and Parcel 17-6 belonging to Yassin Hall.

201.     Notwithstanding their attempts, the dwellings on Parcel 17-5 and 17-6 were successfully completed in 2010 and 2011.

202.     At all material times, Elsa Hall and others combined, conspired and acted in concert to remove Ethlyn Hall from her home, isolate her from others, take advantage of her

mental and physical deterioration, destroy her relationship with Samuel Hall and Yassin Hall and the children of Yassin Hall and deprive her of her property, to the detriment of Samuel Hall, Yassin Hall and the children of Yassin Hall, grandchildren of Ethlyn Hall, namely, Marik Young, Yamisha Young, Aubrey Warner, Jr., and Roumell Augustine.

## COUNT I

## BREACH OF FIDUCIARY DUTY

203.     After taking advantage of Ethlyn Hall for years, on or after August 2010**,** Elsa Hall and others used their confidential relationship with Ethlyn Hall to exercise undue influence over her and take advantage of her, especially after she mentally and physically declined and then isolated her from the rest of her family and friends at a time when she could not walk, cook for herself, grocery shop, remember telephone numbers, or take care of herself or manage her own funds, and thus became increasingly dependent on the assistance of others.

204.     Because of the physical and mental infirmities of Ethlyn Hall, Elsa Hall and others have been able to take unfair advantage of Ethlyn Hall and to exercise undue influence over her and cause her to sign letters, a deed, Trust, and Will.  Elsa Hall individually breached the duty of care she owed to her mother.

205.     From and after August of 2010, Elsa Hall used and exerted undue influence on her mother while she was in her control, and  Elsa Hall was in charge of Ethlyn Hall and the management and distribution of her income and property.

206.     Since August 2010, she exercised complete dominion and control over the person of Ethlyn Hall as well as her income and property, and continues to control her property through the Trust.

207.     Elsa Hall and others have failed to account for their stewardship of the welfare, income and property, or for their egregious behavior.

208.     As Ethlyn Hall's agent and custodian, Elsa Hall owed her heirs a duty of loyalty and had a fiduciary duty to act in her best interest.

209.     Elsa Hall and others breached their fiduciary duty to Ethlyn Hall by:

a.   Seeking to take advantage of her dementia and paranoia;

b.   presenting documents to her and telling her to sign them knowing that due to her mental infirmity she did not understand them or their legal consequence;

c.   Keeping and spending her income for their own benefit;

d.   failing to maintain adequate records of all transactions entered into on her behalf;

e.   moving her out of her home;

f.   causing her to transfer her assets into a Trust for their benefit three months after they moved her out of her home;

g.   denying her the opportunity to go to her own son's funeral;

h.   moving her to Florida away from the rest of her family and friends;

i.   concealing her whereabouts from Samuel Hall, Yassin Hall and other members of her family and her friends;

j.   attempting to place and rent out her storage shed on the beach without amenities or CZM approval in violation of law and risk fines and sanctions;

k.   depriving her of the love and affection of her son, granddaughter and great-grandchildren.

l.   wasting her savings and burial fund.

m. causing Ethllyn Hall to execute a Trust and a Will while she lacked the mental capacity to do as a result of undue influence from Elsa Hall.

210.    As a direct and proximate result of her wrongful actions in breach of her fiduciary duty owed to Ethlyn Hall, her mother, and to the rest of her family, Elsa Hall has caused damages and injuries to her mother's estate, and to Samuel Hall, Yassin Hall and other family members.

**COUNT II**

**<u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>**

211.    All allegations above are incorporated herein by reference as if set forth at length.

212.    Elsa Hall and Phyllis Hall-Brin have acted willfully, wrongfully and maliciously to secret away, confine, and remove from the Virgin Islands, the person of Ethlyn Hall for the purpose of alienating her from Samuel Hall, denying him and Yassin Hall access to their mother and grandmother and otherwise to hold her under their dominion and control all to the detriment of Samuel Hall, Yassin Hall and others.

213.    The removal of Ethlyn Hall, from the Virgin Islands, where she was born and has lived most of her life, including all of the past 52 years, was accomplished as a direct combination, plan and scheme of the Elsa Hall and others.

214.    Prior to the removal of Ethlyn Hall from the Virgin Islands, the last time she had flown on an airplane was to attend the graduation from law school of Plaintiff Samuel Hall in 1975.

215.    Elsa Hall and Phyllis Hall-Brin, by removing Ethlyn Hall from St. John, Virgin Islands and attempting to establish a new domicile in Florida subjected her person and

her estate to potentially substantial tax liabilities for which she and her estate would not otherwise be liable, all to the damage of Ethlyn Hall, her estate, and her heirs.

216.    As a person born in the Virgin Islands and resident in the Virgin Islands, Ethlyn Hall's estate would not be subject to federal estate taxes, but that is not true if she is removed from the Virgin Islands and domiciled in Florida.

217.    The removal of Ethlyn Hall from the Virgin Islands was accomplished with the motive to control her, isolate her, exert undue influence over her and to otherwise interfere with the relationship she has with Samuel Hall and Yassin Hall.

218.    All of the actions of Elsa Hall were calculated to isolate and control Ethlyn Hall, her person and estate, all to the pecuniary advantage of Elsa Hall, and others, in favors of those individuals Elsa Hall wished to benefit, to the detriment of Samuel Hall, Yassin Hall and others.

219.    In furtherance of their plan, scheme and design, they combined to overreach and overcome the will of Ethlyn Hall by moving her out of her home in August 2010 and then causing her to form a Trust of her assets three months later, in November 2010, without the knowledge and consent of Samuel Hall and Yassin Hall that will ultimately and fraudulently benefit them to the detriment of Samuel Hall, Yassin Hall and their heirs.

220.    In furtherance of their plan, scheme and design, Elsa Hall and others have controlled all rental and other income that would otherwise be payable to Ethlyn Hall, and appropriated these amounts to their own use and benefit while using her lack of resources as part of the false justification for having moved her to Florida.

221.      In furtherance of their plan, scheme and design, they deliberately sought to cause Samuel Hall and Yassin Hall to worry about the health and well-being of Ethlyn Hall until she passed away.

222.      Their willful, wrongful, intentional and calculated acts have been purposefully designed to drive a wedge between mother and son, and granddaughter and grandmother, and to wrongfully deny them the attention, time, association, contact, love and affection of Ethlyn Hall solely to advance their greed, avarice and pecuniary interest.

223.      Their willful, wrongful, intentional and calculated acts have been purposefully designed to alienate Ethlyn Hall from her son and granddaughter, Yassin Hall, and the children of Yassin Hall and to wrongfully deny Yassin Hall and her children the attention, time, association, contact, love and affection of her grandmother, all to their detriment and solely to advance their own greed, avarice and pecuniary interest.

224.      The conduct of Elsa Hall and others was intended to and did cause Samuel Hall and Yassin Hall and others emotional distress.

225.      As a direct and proximate result of their wrongful conduct, Samuel Hall suffered emotional distress, pain of the mind and body, mental anguish, loss of sleep, and other physical symptoms, all to their detriment.


## COUNT III

## FRAUD

226.      All allegations above are incorporated herein by reference as if set forth at length.

227.     By sending out letters and emails to Samuel Hall through the use of U.S. mail, by fax and by email, purporting to be from Ethlyn Hall, who they are not, Elsa Hall committed fraud against the Plaintiff.

228.     Elsa Hall sent letters, email and faxes fraudulently to Samuel Hall in order to (a) obtain money from him under false pretenses, and (b) prevent him from fulfilling his commitment to his mother to see to the completion of the cottage of Yassin Hall, and (d) discourage him from looking out for his mother's best interests, and (e) to deprive him of his inheritance from his mother.

229.     Elsa Hall also through the execution of the Will and Trust sought to benefit herself to the detriment of Plaintiff and Ethlyn Hall's other heirs.

     Elsa Hall fraudulent conduct caused Ethlyn Hall in reliance thereon to move to Miami to her detriment and to the detriment of Samuel Hall, Yassin Hall and others, and to execute leases, will and trust documents in contrary to her own interests and those of Plaintiff and others.

230.     Elsa Hall continues to this date to fraudulently pursue a related case against Plaintiff when she knows of her own personal knowledge that there is no valid cause of action against Plaintiff.

231.     Elsa Hall's conduct has been outrageous.

232.     Samuel Hall is entitled to punitive damages as a result of her outrageous conduct.

## COUNT IV

## CIVIL CONSPIRACY/TORTIOUS INTERFERENCE

233.     All allegations above are incorporated herein by reference as if set forth at length.

234.     Elsa Hall, Phyllis Hall Brin and others have combined, agreed, conspired, planned and acted in such a way as to wrongfully, intentionally, and tortiously interfered with the relationship that Samuel Hall had with his mother, by denying him access to Ethlyn Hall and removing her from the Virgin Islands and causing her to sign leases, will, powers of attorney, contracts for the sale of real property and other documents, knowing that her physical and mental condition has been impaired due to her advanced age and the undue influence of Elsa Hall.

235.     Elsa Hall and others combined, agreed, conspired, planned and acted in such a way as to wrongfully, intentionally, and tortuously interfered with the relationship that Yassin Hall had with her grandmother, by denying her access to Ethlyn Hall and removing her from the Virgin Islands, knowing that her physical and mental condition was impaired due to her advanced age and the undue influence of the Plaintiffs.

236.     Elsa Hall is liable to Samuel Hall and Yassin Hall for tortious interference with their relationship with Ethlyn Hall and the inheritance they would have received from Ethlyn Hall but for the wrongful conduct of Elsa Hall.

237.     As a direct and proximate result of the wrongful conduct of Elsa Hall and others, they have caused or attempted to cause Samuel Hall and Yassin Hall and the children of Yassin Hall the loss of their inheritance from Ethlyn Hall, as well mental anguish, pain, and other damages.

## COUNT V

## CONVERSTION

238.     All allegations above are incorporated herein by reference as if set forth at length.

239.    Elsa Hall converted the property of Ethlyn Hall and the inheritance of Samuel
Hall to her own use.

240.    As a direct and proximate result of said conversion, Elsa Hall is liable to Plaintiff
and to the Estate of Ethlyn Hall.

## COUNT VI

## <u>MANDATORY INJUNCTION</u>

241.    All allegations above are incorporated herein by reference as if set forth at length.

242.    Ethlyn Hall, up to the date of her death, was within the possession, dominion and
control of Elsa Hall such that due to her advanced age, Samuel Hall and others have been
forever denied the affections of Ethlyn Hall by virtue of her actions.

243.    After the passing of Ethlyn Hall, and even before she was laid to rest on May 26,
2012, Plaintiff Elsa Hall sought in Family Court to removal the notice of lis pendens
placed on the property of Ethlyn Hall by Plaintiff Samuel Hall in order to protect against
its transfer by Elsa Hall.

244.    Elsa Hall attempted its removal without ever consenting to or submitting to the
jurisdiction of the Family Court.

245.    On May 15, 2012, Elsa Hall sought to get the Family Court to cancel the notice of
lis pendens so that the property of Ethlyn Hall could be transferred or conveyed to
another.

246.    The Trust and Will all other such documents purported to benefit Elsa Hall and
others and disfavor Samuel Hall and others should be invalidated as a result of the undue
influence of Elsa Hall.

34

247.     Unless this Court invalidates the Trust and the Will those other documents and enjoins Elsa Hall individually from disposing or transferring the property of Ethlyn Hall, she will exploit the property for her own benefit.

248.     Samuel Hall has no adequate remedy at law to assure that Elsa Hall and others will turn over to its rightful heirs the property of Ethlyn Hall they wrongfully obtained.

249.     Samuel Hall and other heirs of Ethlyn Hall will suffer and have suffered irreparable injury if Elsa Hall succeeds in selling the property of Ethlyn Hall.

250.     Money damages are inadequate to compensate Samuel Hall and Yassin Hall for the loss of their inheritance in this family property unless the Court enjoins the wrongful conduct of Elsa Hall and others.

251.     Samuel Hall is entitled to mandatory injunctive relief requiring Elsa Hall, individually to return to the estate of Ethlyn Hall her property wrongfully taken from her.


## COUNT VII

## ACCOUNTING

252.     All allegations above are incorporated herein by reference as if set forth at length.

253.     Elsa Hall and the Trust have received funds and property as described above, in an unknown amount, which was the property of Ethlyn Hall.

254.     Elsa Hall has placed some of those funds in her own personal bank accounts and obtained long-term leases in her own name and in the name of a corporation she owns, Botanical Villas, Inc. to the property of Ethlyn Hall.

255.     Samuel Hall requires this Court's intervention to order her to provide an

accounting of all transactions by Elsa Hall concerning Ethlyn Hall's property and income

that has been in her care, custody and control.

## COUNT VIII

## <u>CONSTRUCTIVE TRUST</u>

256.     All allegations above are incorporated herein by reference as if set forth at length.

257.     By reason of the wrongful manner in which Elsa Hall obtained and converted

money and property belonging to Ethlyn Hall for her personal benefit she and the Trust

should be required to disgorge themselves of that income and property and be directed to

place said property and all profits and improvements therefrom in constructive trust for

the heirs at law and next of kin of Ethlyn Hall.

258.     In the meantime, Samuel Hall, Yassin Hall and her children are entitled to the

imposition of an equitable lien on the property of Ethlyn Hall.

## COUNT IX

## <u>TORTIOUS INTERFERENCE</u>

259.     All allegations above are incorporated herein by reference as if set forth at length.

260.     By fraud and undue influence, Elsa Hall induced the mother and grandmother,

respectively, of Samuel Hall and Yassin Hall, while she was 94 years old, in ill health, of

unsound mind and isolated from them, to transfer to the Trust her valuable property, in an

attempt to cause her to disinherit Samuel Hall and Yassin Hall.

261.     Elsa Hall tortiously interfered in the relationship between Plaintiff Samuel Hall

and Yassin Hall, on the one hand, with Ethlyn Hall on the other and caused a wrongful

interference with and deprivation of their intended legacy.

262.     That tortious interference was discovered in January 2013 when Plaintiff was

provided with a copy of the Will and the Trust.

263.     But for Elsa Hall's fraud and undue influence upon Ethlyn Hall, Plaintiff Samuel

Hall and Yassin Hall as heirs at law of Ethlyn Hall would receive an inheritance from

Ethlyn Hall, which, by virtue of Elsa Hall's tortious conduct, she has sought to prevent.

264.     As a direct and proximate result of Elsa Hall's wrongful conduct, Samuel  Hall

has sustained damages.

WHEREFORE Plaintiffs pray for judgment against Plaintiffs jointly and severally for

compensatory and punitive damages as may be proven at trial, and for injunctive relief as

follows:

a.   Requiring Plaintiffs to return to the estate of Ethlyn Hall her property they wrongfully

took from her and which would thereby constitute the inheritance of Plaintiff Hall and

Yassin Hall

b.   Enjoining Plaintiff from wasting the assets of Ethlyn Hall and requiring Plaintiffs to

account for her assets in their possession or converted by them;

c.   Removing Elsa Hall as trustee of the Trust;

c. Requiring Plaintiff to account for the income and property of Ethlyn Hall;

d. Imposing a constructive trust;

e.  Invalidating the Will and the Trust and disgorging from Elsa Hall and the Trust and

others, the money and property belonging to Ethlyn Hall and placing said property and all profits

therefrom in constructive trust for the heirs at law and next of kin of Ethlyn Hall;

f. Such and further relief as to the Court may seem just, equitable

and proper.

Respectfully submitted,

DATED:   October 1, 2013

*s/Marie Thomas Griffith*
Marie Thomas Griffith
VI Bar No. 618

Samuel H. Hall, Jr.
VI Bar No. 289

HALL & GRIFFITH, P.C.
P.O. Box 305587
No. 91B-1 Solberg
St. Thomas, U.S. Virgin Islands 00803-5587
Tel: 340-715-2945
Fax: 340-776-8416
marie@hallgriffith.com
sam@hallgriffith.com

Counsel for Plaintiff

## CERTIFICATE OF SERVICE

It is hereby certified that on October 1, 2013 I electronically filed the foregoing pleading, pursuant to Rule 26.1, with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

Andrew C. Simpson (VI Bar 451)
Rachelle M. Shocklee (VI Bar 712)
2191 Church Street, Suite 5
Christiansted, VI 00820
(T) 340-719-3900 / (F) 340-719-3903
Counsel for Plaintiffs

ROBERT L. KING
Law Offices of Robert L. King
The Law Center
1212 Bjerge Gade
P.O. Box 9768
St. Thomas, VI 00801
Tel. 340-776-1014
Fax. 340-774-5299
Co-counsel for Plaintiffs

<u>s/Samuel H. Hall, Jr.</u>