## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| ELSA HALL as PERSONAL REPRESENTATIVE of the ESTATE OF ETHLYN LOUIS HALL, and ELSA Hall as TRUSTEE of the ETHLYN LOUISE HALL FAMILY TRUST, | ) ) ) ) ) | |
| | ) | Civil No. 2011-54 |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SAMUEL H. HALL, Jr. and HALL & GRIFFITH, P.C., | ) ) ) | |
| Defendants. | ) ) | |
| | ) | |
| SAMUEL H. HALL, Jr., | ) ) | |
| Plaintiff, | ) | Civil No. 2013-95 |
| v. | ) ) ) | |
| ELSA HALL, | ) ) | |
| Defendant. | ) ) | |

ATTORNEYS:

**Andrew C. Simpson, Esq.**
**Emily A. Shoup, Esq.**
Law Offices of Andrew Simpson
St. Croix, U.S.V.I.
    *For Elsa Emily Hall in her representative capacity and as*
    *trustee.*

**Carl A. Beckstedt, III, Esq.**
Beckstedt and Associate
St. Thomas, U.S.V.I.
    *For Elsa Emily Hall in her personal capacity.*

**Robert L. King, Esq.**
Law Offices of Robert L. King
St. Thomas, U.S.V.I.

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 2

> *For Samuel Hall and Hall and Griffith, PC.*

**Marie E. Thomas-Griffith, Esq.**
Hall & Griffith, P.C., PC.
St. Thomas, U.S.V.I.
> *For Samuel Hall and Hall and Griffith, PC.*

## ORDER

**GÓMEZ, J.**

Before the Court are Elsa Hall's motion for judgment as a matter of law and motion for new trial in Civil No. 2013-95. Also before the Court is Samuel H. Hall, Jr. and Hall & Griffith P.C.'s motion for attorney's fees in Civil No. 2011-54 and Civil No. 2013-95.

### I.    FACTUAL AND PROCEDURAL BACKGROUND

At all material times, until approximately April 19, 2002, Ethlyn Louise Hall ("Ethlyn Hall")[1] was the owner of the plot of land known as Parcel 17, Estate Peter Bay, St. John, U.S.V.I. ("the Property"). On or about April 19, 2002, Ethlyn Hall subdivided the Property into separate sub-plots. Ethlyn Hall transferred ownership of certain of the plots to her children and grandchildren as gifts. Specifically, she executed a Deed of

---

[1] Ethlyn Hall was born on June 6, 1916. She was 94 years old as of the date that the Complaint was filed.

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 3

Gift, granting to her son, Attorney Samuel H. Hall, Jr. ("Samuel

Hall")[2], the real property described as:

> Parcel No. 17-5, Estate Peter Bay, No. 2aa Maho Bay
> Quarter, St. John, U.S. Virgin Islands consisting of
> 1.161 acre, more or less.

("Parcel 17-5"). She also made the following gifts:

> Parcel 17-2 to her daughter, Elsa Hall;
> Parcel 17-4 to her daughter, Phyllis Hall Brin; and
> Parcel 17-6 to her granddaughter, Yassin Hall Young.

("the Gifts"). Samuel Hall represented his mother in the

aforementioned transactions, drawing up the legal documents to

accomplish the gifts and recording the same.

From April 19, 2002, until approximately December 15, 2010,

Ethlyn Hall was the owner of the plot of land known as Parcel

17-7, Estate Peter Bay on St. John, U.S. Virgin Islands ("Parcel

17-7").

On January 24, 2003, Ethlyn Hall, as landlord, entered into

a Ground Lease (the "2003 Ground Lease") with Andrews St. John

Trust ("Andrews"), as tenant. The lease was drafted by Samuel

Hall. Pursuant to the 2003 Ground Lease, Ethlyn Hall leased

Parcel 17-7 to Andrews for a period of fifty years. The lease

provided that Andrews was to design and build two cottages at

---

[2] At all relevant times, until sometime in 2010, Attorney Samuel H. Hall, Jr.,
Ethlyn Hall's son, served as Ethlyn Hall's attorney.

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 4

Andrews's expense. One cottage was to be built on Parcel 17-6 (the "17-6 Cottage"). It would be owned by Yassin Hall Young. The other cottage was to be built on Parcel 17-4 (the "17-4 Cottage"). It would be owned by Phyllis Hall Brin.

The 2003 Ground Lease provided that, if the 17-6 Cottage was not completed within two years from the date of the lease, Andrews was to pay rent of $5,000 per month ($2,500 to Yassin Hall Young and $2,500 to Phyllis Hall Brin), until the date of completion. If the 17-4 Cottage was not completed within four years of the date of the lease, Andrews was to pay $2,500 per month to Phyllis Hall Brin until the date of completion. Additionally, if the two cottages were not completed in the requisite time, Ethlyn Hall, Phyllis Hall Brin, and Yassin Hall Young retained the right to seek injunctive relief and to sue for specific performance. The lease also provided that the three of them would be granted a first priority lien on any improvements constructed on Parcel 17-7 by Andrews, and on any income derived by Andrews from the use and enjoyment of Parcel 17-7.

Also under the 2003 Ground Lease, Andrews was obligated to reimburse Ethlyn Hall for all property taxes on Parcel 17-7, including all property taxes on any improvements thereon.

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 5

Construction of the cottages on Parcels 17-4 and 17-6 was not completed by the time allotted in the 2003 Ground Lease. As such, Andrews became obligated to pay rent. Samuel Hall collected the rent for his mother under the 2003 Ground Lease. He also managed Andrews's reimbursement of property taxes to Ethlyn Hall and Andrews's construction of the cottages.

At some point in time during the term of the 2003 Ground Lease, changes were made to the design of the 17-6 Cottage, substantially increasing its size. Ethlyn Hall was aware of the changes.

On August 3, 2007, Samuel Hall drafted, and Ethlyn Hall allegedly signed, a document which allowed Samuel Hall to halt or postpone construction on the 17-4 Cottage. The document allowed Samuel Hall to redirect the 2003 Ground Lease rental income from being used for the construction of the cottage on Parcel 17-4 to being used for the construction of a house on Parcel 17-5, owned by Samuel Hall.

On the following day, August 4, 2007, Ethlyn Hall allegedly signed a Power of Attorney in favor of Samuel Hall. The Power of Attorney was not notarized. That same day, Samuel Hall drafted, and Ethlyn Hall allegedly signed, a document purporting to be an Assignment of Interest. Pursuant to the document, Ethlyn Hall

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 6

assigned all of her interest in the 2003 Ground Lease to Samuel

Hall in consideration for his assistance with her future care

and upkeep.

On August 13, 2008, Ethlyn Hall signed another Power of

Attorney in favor of Samuel Hall. The document was notarized by

Samuel Hall's law partner, Marie Thomas-Griffith.

In August of 2010, Ethlyn Hall sent letters to Samuel Hall

requesting that he provide her with a complete accounting of her

financial obligations with regard to Parcel 17-7. She also

requested that Samuel Hall provide her with information

regarding the reimbursement of property taxes paid on Parcel 17-

7. Samuel Hall did not respond to Ethlyn Hall's requests for

information.

Thereafter, Ethlyn Hall allegedly became aware that, on or

about October 28, 2009, Samuel Hall, purporting to act

"individually and as attorney-in-fact for" Ethlyn Hall, entered

into an "Early Termination of Lease, Mutual Release and Estoppel

Certificate" (the "Release"), with Andrews. The Release

discharged Andrews of any further obligation under the terms of

the 2003 Ground Lease. Ethlyn Hall alleges that she was neither

aware of, nor did she otherwise consent to or approve of the

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 7

transaction at the time that Samuel Hall purportedly undertook it on her behalf.

Ethlyn Hall also allegedly became aware that Samuel Hall, purporting to act as her attorney-in-fact, entered into a lease agreement dated December 2, 2008 (the "2008 Lease"), with the Talton Family Trust ("Talton"). Under the 2008 Lease, Parcel 17-7 was leased to Talton for a period of 75 years, with the rent payment to be made in an $800,000 lump sum. The lump sum was payable to Samuel Hall, as "agent and attorney in fact" for Ethlyn Hall. The lease agreement obligated Talton to reimburse Ethlyn Hall for all property taxes on Parcel 17-7.

On or before December 15, 2010, Ethlyn Hall discharged Samuel Hall and his firm as counsel. Thereafter, she retained new counsel, and created the Ethlyn Louise Hall Family Trust ("the Trust"). On December 15, 2010, Ethlyn Hall transferred all of her property to the Trust. Ethlyn Hall named herself the sole trustee of the Trust.

Subsequently, Ethlyn Hall received a letter from Samuel Hall, dated February 1, 2011. The letter informed Ethlyn Hall that the 2008 Lease generated a capital gain in 2010 totaling $1,070,000. The letter explained that the capital gain was subject to a capital gains tax of 15%. In the letter, Samuel

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 8

Hall stated that Ethlyn Hall must pay the capital gains tax in the full amount. He further explained that he, along with Phyllis Hall Brin and Yassin Hall Young, would reimburse Ethlyn Hall for her capital gains tax payment.

Thereafter, on May 9, 2011, Ethlyn Hall, individually and as Trustee of the Ethlyn Louise Hall Family Trust (the "Trust"), filed a six-count complaint against Samuel Hall and his law firm, Hall and Griffith, P.C. in Civil No. 11-54 (the "Trust Action"). Count One alleged a claim for breach of fiduciary duty against Samuel Hall. Count Two alleged a claim for legal malpractice against Samuel Hall and Hall & Griffith, P.C. Count Three alleged an action for fraud against Samuel Hall. Count Four asked the Court to order an accounting. Count Five asked the Court to establish a constructive trust for allegedly diverted proceeds and other monies. Count Six requested that the Court impose an equitable lien on Parcel 17-5.

While the Trust Action was pending, Ethlyn Hall passed away. Elsa Hall, as successor trustee to the Trust and personal representative of Ethlyn Hall's estate (the "Trustee"), amended the complaint. The amended complaint contains ten counts. Count One alleges a breach of fiduciary duty claim against Samuel Hall and Hall & Griffith, P.C. arising out of the attorney-client

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 9

relationship. Count Two alleges a breach of fiduciary duty claim
against Samuel Hall arising out of a power of attorney. Count
Three alleges a legal malpractice claim against Samuel Hall and
Hall & Griffith, P.C. Counts Four and Five allege conversion
claims against Samuel Hall and Hall & Griffith, P.C. Count Six
alleges fraud against Samuel Hall. Count Seven alleges an unjust
enrichment claim against Samuel Hall. Count Eight seeks an
accounting. Count Nine seeks a constructive trust. Count Ten
seeks an equitable lien.

Samuel Hall then filed a nine-count counter-claim against
the Trustee in the Trust Action. He also filed the nine-count
complaint against Elsa Hall in her personal capacity ("Elsa
Hall") in Civil No. 2013-95 (the "Samuel Hall Action"). Count
One alleges a breach of fiduciary duty claim against Elsa Hall.
Count Two alleges an intentional infliction of emotional
distress claim against Elsa Hall. Count Three alleges a fraud
claim against Elsa Hall. Count Four alleges civil conspiracy and
tortious interference claims against Elsa Hall, and others.
Count Five alleges a conversion claim against Elsa Hall. Count
Six seeks a mandatory injunction against Elsa Hall. Count Seven
requests an accounting from Elsa Hall and the Trust. Count Eight

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 10

asserts a constructive trust. Count Nine asserts a claim for tortious interference against Elsa Hall.

The Trust Action and the Samuel Hall Action were consolidated. Prior to trial, the Court dismissed the counterclaims in the Trust Action. The Court also dismissed all counts other than Counts Two, Four, and Nine in the Samuel Hall Action. At trial, the Court dismissed Counts Four and Nine of the Samuel Hall Action. As such, the only claim asserted by Samuel Hall that reached the jury was Count Two of the complaint in the Samuel Hall Action.

The jury found in Samuel Hall's favor on Count Two in the Samuel Hall Action--the claim for intentional infliction of emotional distress--and awarded him $500,000 in compensatory damages and $1,500,000 in punitive damages.

Thereafter, Elsa Hall filed a motion for judgment as a matter of law directed at the intentional infliction of emotional distress claim and a motion for new trial directed at the intentional infliction of emotional distress claim.

## II.  <u>DISCUSSION</u>

### A. Rule 50

Judgment as a matter of law pursuant to Rule 50 should be granted "only if, viewing the evidence in the light most

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 11

favorable to the nonmovant and giving [the nonmovant] the

advantage of every fair and reasonable inference, there is

insufficient evidence from which a jury reasonably could find

liability." *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153,

1166 (3d Cir. 1993). " 'The question is not whether there is

literally no evidence supporting the unsuccessful party, but

whether there is evidence upon which a reasonable jury could

properly have found its verdict.' " *Johnson v. Campbell,* 332

F.3d 199, 204 (3d. Cir. 2003)(quoting *Gomez v. Allegheny Health

Servs. Inc.,* 71 F.3d 1079, 1083 (3d Cir. 1995)).

**B. Rule 59**

Rule 59 provides that a new trial may be granted on some or

all of the issues that were tried to the jury. Fed.R.Civ.P. 59.

A court must grant a motion for new trial when there are

nonconstitutional errors in a civil suit unless "it is highly

probable that the errors did not affect the outcome of the

case." *See McQueeney v. Wilmington Trust Co.*, 779 F.2d 916, 917

(3d Cir. 1985).

### III. <u>ANALYSIS</u>

**A. Motion for Judgment as a Matter of Law**

Elsa Hall argues that she is entitled to judgment as a matter

of law on the intentional infliction of emotional distress claim

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 12

asserted against her. Specifically, she asserts that the facts underlying Samuel Hall's intentional infliction of emotional distress claim are identical to the facts underlying the claims for tortious interference with familial relations and tortious interference with an inheritance. She argues that she is entitled to judgment as a matter of law because: (1) no cause of action for tortious interference with familial relations is permitted in this action; and (2) no tortious interference with an inheritance claim is permitted in this action.

The Restatement (Third) of Torts provides, in relevant part, that:

> A variety of other torts protect specific aspects of emotional tranquility. They include defamation, invasion of privacy, false imprisonment, and malicious prosecution. The more general protection for emotional harm contained in this Section should not be used to dilute or modify the requirements of those torts, especially those with a communicative aspect because of the special role of communication in the American legal system.
>
> . . .
>
> Similarly, when protection of an identified emotional interest is removed from tort liability, claims for infliction of emotional harm under this Chapter are unavailable for conduct that would have infringed that interest. For example, the torts of criminal conversation and alienation of affection protected a spouse's specific interest in his or her partner's remaining monogamous and a more general interest in family harmony. In jurisdictions that have abolished those torts, an actor is not subject

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 13

> to liability under this Chapter for conduct that
> would have subjected the actor to liability under
> those torts. However, if the actor's conduct goes
> beyond that comprising the abolished tort, the actor
> may be subject to liability.

Restatement (Third) of Torts: Phys. & Emot. Harm § 47 cmt. o

(2012)(addressing negligent infliction of emotional distress).

In support of her contention that Sam Hall's claim falls

within the actions precluded in the second paragraph, Elsa Hall

cites to *Matthew v. Herman*. No. SCTCIV20090074, 2012 WL 1965891

(V.I. May 15, 2012). In that case, the Virgin Islands Supreme

Court (the "VI Supreme Court") considered whether the territory

recognized causes of action for alienation of a spouse's

affection, Restatement (Second) of Torts § 683 (1977) ("Section

683"), or criminal conversation with a spouse, Restatement

(Second) of Torts § 685 (1977) ("Section 685").[3] The court held

that the Virgin Islands did not recognize either cause of

action. It reasoned that:

> First, we note that the torts of alienation of
> affection and criminal conversation, the so[-]called
> "amatory torts," have never been cited to or used by
> any court in the Virgin Islands. Our research has
> not disclosed a single opinion written in the Virgin
> Islands to ever cite to sections 683 or 685 of either
> the First or Second Restatement of Torts. Thus,
> unlike the circumstances in *Banks,* neither section

---

[3] The tort for criminal conversation provides for liability to a husband or
wife when a third-party has sexual intercourse with the husband or wife's
spouse.  Restatement (Second) of Torts § 685 (1977).

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 14

has received "widespread acceptance" so as to require great deference to the doctrines contained therein.

Furthermore, the torts of alienation of affection and criminal conversation have been abolished in the vast majority of American jurisdictions. *See Doe v. Doe,* 747 A.2d 617, 622 (Md.2000) ("Beginning in the 1930's, public resentment began to grow against criminal conversation as well as other "amatory" actions, such as alienation of affections and breach of promise to marry. This resentment led to legislative reform, with the enactment of "Heart Balm Acts" throughout the country. In 1935 Indiana was the first state to enact such a law, abolishing "all civil causes of action for breach of promise to marry, for alienation of affections, [and] for criminal conversation." Ch. 208 of the Indiana Acts of 1935, § 1, presently codified as Indiana Code Annotated § 34-12-2-1 (1999). The majority of states soon followed, abolishing amatory torts either by statute or by judicial decision."); *Weaver v. Union Carbide Corp.,* 378 S.E.2d 105, 108 (W.Va.1989) ("A majority of jurisdictions, like West Virginia, have abolished the tort of alienation of affections either by statute or judicial decision."); *see also Strock v. Pressnell,* 527 N.E.2d 1235, 1240 & n.6 (Ohio 1988) (collecting cases and noting that "[s]ince the 1930s, more than half of the states have abolished or severely limited actions for alienation of affections and/or criminal conversation, either by statute or judicial decision."); *Veeder v. Kennedy,* 589 N.W.2d 610, 614 & n.6 (S.D.1999) ("Alienation of affections remains a legitimate cause of action in nine states."); 41 C.J.S. *Husband and Wife* § 248 ("The cause of action for criminal conversation is generally not looked upon with favor and may no longer be brought in a majority of jurisdictions.") (footnotes omitted). The overwhelming majority rule, then, is against the adoption of the amatory torts.

Finally, we agree with those courts that the refusal to recognize the amatory torts is the sounder rule.

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 15

The reasons given for abolishing the amatory torts differ from jurisdiction to jurisdiction, but generally the emphasized concerns are (1) the torts were originally founded on the idea that wives were property of their husbands, (2) the torts have destructive results on existing marriages, and (3) the courts are unable to adequately valuate and address the harms caused by adulterous behavior. *Compare Helsel v. Noellsch,* 107 S.W.3d 231, 232 (Mo.2003) ("There are many persuasive reasons for abolishing the tort of alienation of affection. The tort is grounded in antiquated concepts of property interests in a spouse, is presently based upon the faulty assumption that it preserves marriages, and is inconsistent with this Court's decision in *Thomas v. Siddiqui,* [869 S.W.2d 740, 743 (Mo.1994) ] wherein this Court abolished the closely related common law tort of criminal conversation."); *with Weaver,* 378 S.E.2d at 108 ("This movement toward abolition is defended for a variety of reasons. Possibly the most widely cited reason is the potential for blackmail and extortion between spouses. Another is that the court system is ill-equipped to fairly and objectively assess the loss. Finally, alienation of affections is frequently attacked for the reason that it resembles a "forced sale" of one spouse's affections.... These reasons reflect the consensus that marital harmony is best served by judicial noninvolvement."). For the same reasons set out by these courts, we conclude that the refusal to recognize the amatory torts is the sounder rule.

To summarize, then, the amatory torts, as set out in the Restatements, have not gained widespread acceptance in the Virgin Islands, indeed they have never been utilized at all. Additionally, the overwhelming majority rule has been in favor of abandoning the amatory torts because they are based on antiquated concepts of women as property and are destructive to existing marriages. Accordingly, all of the factors identified in *Banks* militate against the adoption of the causes of action reflected in

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 16

> sections 683 and 685 of the First and Second
> Restatements of Torts.

*Id.* at *4-5 (footnote omitted).

As a preliminary matter, the Court notes that the VI Supreme Court's decision in *Matthew v. Herman* only addressed an alienation of affection claim for the alienation of a spouse's affection. Nevertheless, the Court is convinced that the court would apply the same rules outside the marital context. Indeed, in this context, other authorities would counsel the same conclusion. For example, the Restatement (Second) of Torts provides that:

> One who, without more, alienates from a child the
> affections of a parent, is not liable to the child.

Restatement (Second) of Torts § 702A (1977).

Nevertheless, the Court is not convinced that section 683 and section 685 are the only sections relevant to the Court's analysis. Restatement (Second) of Torts § 684 ("Section 684") provides that:

> (1) One who abducts a spouse or by similar
> intentional action compels a spouse to be asunder
> from the other spouse is subject to liability to the
> other spouse for the harm thus caused to any of the
> latter's legally protected marital interests.
>
> (2) One who for the purpose of disrupting the marital
> relation induces one spouse to separate from the
> other spouse or not to return after being separated,

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 17

      is subject to the liability stated in Subsection
      (1).

Restatement (Second) of Torts § 684 (1977).

In his intentional infliction of emotional distress claim, Samuel Hall alleges that "Elsa Hall and Phyllis Hall-Brin have acted willfully, wrongfully and maliciously to secret [sic] away, confine, and remove from the Virgin Islands, the person of Ethlyn Hall for the purpose of alienating her from Samuel Hall, denying him and Yassin Hall access to their mother and grandmother and otherwise to hold her under their dominion and control all to the detriment of Samuel Hall, Yassin Hall and others." (Amended Complaint, ECF No. 8, at ¶ 213.) The conduct alleged strikes the Court as more similar to the conduct described in Section 684, than the conduct described in the sections discussed in *Matthew v. Herman*, Sections 683 and 685.

The reasoning in *Matthew v. Herman* provides the Court with some guidance on whether the VI Supreme Court would permit an action for the conduct described in Section 684. In *Matthew v. Herman*, the VI Supreme Court identified three factors that weighed against permitting causes of action for alienation of affection or criminal conversation in the marital context:

      (1) the torts were originally founded on the idea
      that wives were property of their husbands, (2) the
      torts have destructive results on existing

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 18

marriages, and (3) the courts are unable to
adequately valuate and address the harms caused by
adulterous behavior.

*Matthew*, 2012 WL 1965891, at *4. With respect to Section 684(2),
the factors identified by the VI Supreme Court similarly counsel
against permitting a cause of action. Those factors do not,
however, counsel against permitting a cause of action under
Section 684(1) when a spouse is abducted or forced asunder from
his or her spouse. As such, the Court does not interpret *Matthew
v. Herman* to preclude a claim under Section 684(1).

The Court also notes that there are very significant
differences between the marital relationship and the parent-
child relationship. Indeed, the Restatement (Second) of Torts
acknowledges these differences by addressing torts involving the
parent-child relationship and torts involving the spousal
relationship in separate sections.

No provision of the Restatement (Second) of Torts provides
for a cause of action for an adult child in relation to his or
her parent similar to the cause of action provided for in the
marital context in section 684. Instead, the Restatement merely
notes that the caselaw is in flux as to whether a *minor child* is
permitted to pursue a claim for alienation of the parent's
affections. Restatement (Second) of Torts § 702A, cmt. b (1977).

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 19

Although the Restatement does not ultimately take a position on that matter, it does note that even in that context, "[a] substantial majority of the comparatively few cases that have considered the matter refuse to allow . . . [a minor child to pursue a claim for alienation of the parent's affections], and only a very few cases have permitted it." *Id.*

At the same time, the Court is unaware of any case in which a claim for intentional infliction of emotional distress has not been allowed to proceed when a parent and child are forced "asunder" under the circumstances presented in Section 684(1). Indeed, the Court has located a case where a claim for intentional infliction of emotional distress was allowed to proceed when the court held that an adult child could not bring a claim for tortious interference with her relationship with her mother. *Miller v. Currie*, 50 F.3d 373 (6th Cir. 1995)(holding that allegations by an adult child that, on three separate occasions, the defendants intentionally and maliciously hid her mother from her and, on one occasion, caused her to be arrested when she came to visit her mother, adequately pled a claim for intentional infliction of emotional distress, even when a claim

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 20

for tortious interference with a family relationship was not
available).[4]

In the absence of authority, the Court is unwilling to hold
that an otherwise meritorious claim for intentional infliction
of emotional distress is unavailable. Therefore, the Court
predicts that the VI Supreme Court would permit a cause of
action for intentional infliction of emotional distress when an
adult child and the child's parent are forced "asunder" under
the circumstances presented in Section 684(1).

As such, the Court will not direct the entry of judgment as
a matter of law in favor of Elsa Hall.

**B. New Trial**

The Court's holding raises the concern that the jury
may have found in Samuel Hall's favor because the members
of the jury believed that Elsa Hall enticed Ethlyn Hall
into leaving, rather than abducting her. Indeed, having
reviewed the evidence in this case, the Court concludes
that a jury could have reached its verdict on the basis
that Ethlyn Hall was enticed to leave or that Ethlyn Hall
was forced to leave.

---

[4] The Sixth Circuit did not, however, consider whether one claim precluded the
other.

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 21

The Third Circuit has previously considered the proper remedy for a situation where the basis for the jury verdict was suspect. *See, e.g., Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc.*, 247 F.3d 79 (3d Cir. 2001). In *Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc.*, Ellwood Group, Inc. ("Ellwood") and Uddeholm Tooling AB ("Uddeholm") entered into a joint venture, forming the Ellwood-Uddeholm Steel Company ("EUS"). *Id.* at 86. After the joint venture dissolved, Uddeholm sued Ellwood, alleging, in relevant part a breach of contract claim and a misappropriation of trade secrets and confidential information claim. *Id.* Both of these claims implicated Ellwood's appropriation of Uddeholm's trade secrets and confidential information. See *d.* at 108.

On appeal, the Third Circuit held that under the gist of the action doctrine, the misappropriation of trade secrets claim was barred by the breach of contract claim to the extent that the contract prohibited the misappropriation of trade secrets and confidential information. *Id.* The Court further held that the misappropriation claim was not barred to the extent that the claim alleged the misappropriation of trade secrets or confidential information not protected by the terms of the contract. *Id.* at 107.

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 22

    The Court then ordered a new trial on the misappropriation of trade secrets and confidential information claim. *See id.* The court reasoned that:

> in its jury instructions, the District Court did not distinguish between the misappropriation of know-how and the misappropriation of these other types of confidential information. The jury's special verdict also did not distinguish between these two categories of misappropriation. Thus, we cannot determine whether the jury's verdict on the misappropriation claim was properly grounded on actions outside the scope of the Agreement. We therefore will set aside the verdict for Uddeholm on the misappropriation of trade secrets claim, and remand for a determination of this claim based solely on the misappropriation of trade secrets that do not include the know-how covered by the Know-How Agreement.

*Id.*

    Similarly, here, the Court holds (1) that the intentional infliction of emotional distress claim is partially barred; and (2) that neither the Court's instructions nor the verdict allow the Court to determine whether the jury's verdict was reached on unbarred grounds.[5] Accordingly, a new trial is appropriate.[6]

---

[5] Having reviewed the evidence in the case, it is clear that the jury could have reached its verdict relying on the barred conduct, the unbarred conduct, or both.

[6] Given the Court's ruling, the Court need not address: (1) Elsa Hall's argument that she is entitled to judgment as a matter of law with respect to punitive damages; or (2) the grounds for new trial raised in the motion for new trial.

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 23

### C. Motion for Attorney's Fees

Samuel Hall and Hall & Griffith, P.C. seek an award of attorney's fees and costs under 5 V.I.C. § 541. They seek an award of costs and fees for work done by Samuel Hall, Marie Thomas-Griffith, and Robert King in both the Trust Action and the Samuel Hall Action.

As a preliminary matter, the Court notes that fees and costs are only available to a prevailing party. *See* Fed. R. Civ. P. 54(d); 5 V.I.C. § 541. Because the Court holds that a new trial is appropriate in the Samuel Hall Action, there is no prevailing party. Thus, a request for fees and costs incurred in relation to that action is premature. Therefore, only the fees and costs incurred in relation to the Trust Action are before the Court.

Elsa Hall opposes the motion for attorney's fees and costs on the basis that the motion was untimely filed under Federal Rule of Civil Procedure 54 ("Rule 54"). Samuel Hall and Hall & Griffith, P.C. argue that the time limit provided in Rule 54 does not apply to claims for attorney's fees and costs under 5 V.I.C. § 541 because 5 V.I.C. § 541 is a territorial law, not a federal law.

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 24

Rule 54 provides, in relevant part, that a motion for "attorney's fees or related nontaxable expenses" must "be filed no later than 14 days after the entry of judgment . . . ." Fed. R. Civ. P. 54(d)(2). The 14-day time limit does not apply to a request for costs. *See generally* Fed. R. Civ. P. 54(d).

The Court will first consider the request for attorney's fees. Rule 54 does not by its terms limit its application to claims for attorney's fees brought under federal law. Because Rule 54 covers the situation at hand, the Court must apply the rule to territorial law claims unless the rule "abridge[s], enlarge[s] or modif[ies] any substantive right." *See Hanna v. Plumer*, 380 U.S. 460, 462-74, 85 S. Ct. 1136, 1140-45, 14 L. Ed. 2d 8 (1965). The Court does not find that Rule 54 abridges, enlarges, or modifies any substantive right. As such, the Court holds that the 14-day time limit for filing a motion for attorney's fees applies. *Accord Wallace v. Kmart Corp.*, No. CIV.A. 02-0107, 2011 WL 4024796, at *3 (D.V.I. Sept. 8, 2011)("Kmart's request for attorneys' fees under § 541 is procedurally defective because it was not filed within 14 days of judgment and does not specify the statute entitling it to fees.")

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 25

     Judgment was entered in the Trust Action and the Samuel Hall Action on February 4, 2014. (Civil No. 11-54, ECF No. 420 (Trust Action); Civil No. 13-95, ECF No. 281 (Samuel Hall Action).) The motion for attorney's fees and costs was filed on March 4, 2014. (ECF No. 424.) 28 days passed between the entry of judgment and the filing of the motion. As such, the request for attorney's fees is untimely.

     Nevertheless, the Court may extend the time for filing a motion after the time has "expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Here, Samuel Hall and Hall & Griffith, P.C. have not argued that there was excusable neglect nor provided any evidence of excusable neglect. As such, the Court cannot grant them an extension of time to file their motion. *See id.* Accordingly, the Court must deny their request for attorney's fees.

     The Court will now consider the request for costs. The time limit for filing motions seeking costs is set by local rule. *See* LRCi 64.1. The local rule provides that:

> Within thirty days after the entry of a final judgment or a judgment allowing costs, the prevailing party shall serve on the adverse party and file with the Clerk of the Court a Bill of Costs, together with a notice of motion when application will be made to the Clerk to tax the same.

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 26

LRCi 54.1(a). Here, the motion for bill of costs was submitted 28 days after the entry of judgment. As such, the request for costs was timely. *See id.*

Significantly, the costs demanded are not distributed between the Trust Action and the Samuel Hall Action, preventing the Court from determining whether the costs are better attributed to the Trust Action or the Samuel Hall Action. Instead, Samuel Hall, Marie Thomas-Griffith, and Robert King submitted affidavits indicating that 70% of the attorney's fees and costs should be allocated to the Trust and 30% to Elsa Hall because the bulk of the legal services and costs were spent defending against the Trust's claims.

While it is clear that the affidavits are asserting that 70% of the fees and costs combined are attributable to the Trust Action, it is not clear that the affidavits are asserting that 70% of the costs alone are attributable to the Trust Action. As such, even if a conclusory affidavit were sufficient to establish the proper distribution of costs, the affidavits presented to the Court here are not sufficient.

Accordingly, the Court will deny the request for costs. Samuel Hall and Hall & Griffith, P.C. may reassert their request for costs in the Trust Action, providing more evidence on the

*Elsa Hall v. Samuel Hall*
Civil No. 2011-54
*Samuel Hall v. Elsa Hall*
Civil No. 2013-95
Order
Page 27

proper allocation of costs between the Trust Action and the

Samuel Hall Action.

The premises considered; it is hereby

**ORDERED** that the motion for judgment as a matter of law is

**DENIED**; it is further

**ORDERED** that a new trial in the Samuel Hall Action is

**GRANTED**; it is further

**ORDERED** that the motion for attorney's fees and costs is

**DENIED** insofar as it seeks recovery in the Trust Action; it is

further

**ORDERED** that the motion for attorney's fees and costs is

**MOOT** insofar as it seeks recovery in the Samuel Hall Action; and

it is further

**ORDERED** that by no later than 3:00 PM on Monday, April 11,

2016, Samuel Hall and Hall & Griffith, P.C., shall, to the

extent they wish to do so, submit an amended bill of costs in

the Trust Action.


S\_____
            **Curtis V. Gómez**
            **District Judge**