**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | |
|---|---|
| ELSA HALL, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF ETHLYN LOUISE HALL AND AS SUCCESSOR TRUSTEE OF THE ETHLYN LOUISE HALL FAMILY TRUST,<br><br>Plaintiff,<br><br>v.<br><br>SAMUEL H. Hall, Jr. and Hall & Griffith, P.C.,<br><br>Defendants. | CIVIL NO. 3:11-CV-54 |
| SAMUEL H. HALL, JR.,<br><br>Plaintiff,<br><br>v.<br><br>ELSA HALL,<br><br>Defendant. | CIVIL NO. 3:13-CV-95 |

**DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW**

COMES NOW Defendant, Elsa Hall, by and through undersigned counsel, and moves the Court pursuant to Fed. R. Civ. P. 50(a), for judgment as a matter of law on Plaintiff's claim for intentional infliction of severe emotional distress. In support of this motion, Elsa Hall shows the Court as follows.

**INTRODUCTION**

Elsa Hall is entitled to judgment as a matter of law for several reasons. First, there is insufficient evidence from which a jury could reasonably find that Elsa Hall intentionally inflicted severe emotional distress on Samuel Hall by any conduct, much less abducting Ethlyn Hall or by forcing Ethlyn and Samuel Hall asunder. Second, there is insufficient

evidence from which a jury could reasonably find the plaintiff actually suffered severe emotional distress. Third, there is insufficient evidence from which a jury could reasonably find any emotional distress suffered by Plaintiff was caused by actionable conduct of the defendant. Finally, because the claim(s) upon which notice of punitive damages were pled were dismissed prior to the first trial and there is not clear and convincing evidence from which a jury could reasonable award punitive damages at the retrial, Elsa Hall is entitled to judgment as a matter of law on punitive damages.

Accordingly, as is discussed in greater detail below, it is respectfully submitted that the Court should grant Elsa Hall's Motion and enter judgment as a matter of law on Samuel Hall's intentional infliction of emotional distress claim against Elsa Hall and the issue of punitive damages.[1]

---

[1] Although Elsa Hall recognizes that this is the law of the case and that it governs the instant proceedings, the defendant respectfully disagrees that Virgin Islands law recognizes such a cause of action under the facts of this case, and she reserves the arguments—that no such viable claim exists between adult siblings in the Virgin Islands—raised in her Motion for Judgment as a Matter of Law filed in the first trial and her Motion for Summary Judgment filed on retrial. (Def's Mot. for J. as Matter of Law, ECF Nos. 288, 300; Def's Mot. Summ. J., ECF No. 336).

It is respectfully submitted that even if, for the sake of argument only, Samuel Hall presented sufficient evidence that he suffered severe emotional distress due to outrageous conduct by Elsa Hall in interfering with the family relationship, that underlying conduct would not be actionable under Virgin Islands law and Elsa Hall would not be subject to liability for any severe emotional distress. *See Restatement (Third) of Torts,* § 47 cmt. o. The common law of the Virgin Islands governing torts, like the common law of most other jurisdictions, steers clear of such family disputes, notwithstanding whether they involve outrageous conduct among adult siblings concerning their elderly parents. *See Matthew v. Herman,* 56 V.I. 674 (V.I. 2012); *see also Restatement (Second) of Torts,* § 702A cmt. b ("Section 700 provides that a parent does have an action against a defendant who abducts or otherwise compels or induces a child to leave or not to return to a parent. The Restatement does not set forth a rule for the similar situation in which the defendant compels or induces a parent to leave his minor child or not to return to it after leaving it. A substantial majority of the comparatively few cases that have considered the matter refuse to allow the action, and only a very few cases have permitted it.").

Although the decades old Restatement (Second) of Torts observed that "the subject-matter is in ferment and the conflicting policies have not been fully worked out by the courts," there are virtually no cases that have allowed such a cause of action, and the majority rule still seems to strongly disfavor any such claim. *See, e.g., Ames v. Ames,* NO: 2:13-CV-0405-TOR, 2016 U.S. Dist. LEXIS 166048, at *11-17 (E.D. Wash. Nov. 30, 2016) (refusing to recognize claim that that adult child "conducted an outrageous campaign to destroy the close familial relationship between [adult] Plaintiff and his parents"); *Hutchens v. Hutchens-Collins,* CV-04-281-ST, 2005 U.S. Dist. LEXIS 45413, at *9 (D. Or. June 28, 2005) (observing: "a dispute among family members surrounding the end of a relative's life and disposition of the relative's belongings

*Hall v. Hall*, Civil No. 3:13-CV-95
Defendant Elsa Hall's Rule 50 Motion for Judgment as a Matter of Law
Page 3

**LEGAL STANDARD**

> If a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may:
>> (A) resolve the issue against the party; and
>
>> (B) grant a motion for judgment as a matter of law against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.

Fed. R. Civ. P. 50(a).

Judgment as a matter of law pursuant to Rule 50 should be granted "if, viewing the evidence in the light most favorable to the nonmovant and giving the nonmovant the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Smith v. Katz,* Civil No. 2010-39, 2014 U.S. Dist.

---

necessarily deals with inherently emotional and stressful issues. The conduct of some family members is substantially certain to cause severe emotional distress to other family members. To allow an IIED claim under such circumstances is problematic at best."); *Greene v. Roy,* 604 So. 2d 1359, 1364 (La.App.Ct 1992) (observing that there is "'a growing skepticism in the courts about the usefulness of judicial intervention in family life by way of tort suits,'" *Id.* at 1364 (*quoting Prosser and Keeton on the Law of Torts* § 124, p. 929 (5th ed. 1984), and "courts should be reluctant to allow tort suits in which family members are on opposing sides.'"); *Meikle v. Van Biber,* 745 S.W.2d 714, 717 (Mo. Ct. App. 1987) (where parents of child sued the child's grandparents for emotional distress arising out of the grandparents' willful, malicious and intentional interference with the parents' parental rights, the appellate court affirmed dismissal of the claim because "[t]he emotional distress of which [the parents] complain[] is no more than the alleged consequence of the same acts which caused or aided in causing [the child] to separate from [the parents].")

> As observed by the court in *Ames*:
>> according to the American Law Reports, there is no case where an *adult* "child" has successfully brought suit for alienation from his or her parents' affections: "It seems noteworthy that in the few cases in which an *adult* "child" was suing directly for alienation of his parent's affections, or in which it was an *adult* "child" whose affections allegedly had been alienated from his parent, recovery has been denied, and that in the only case in which recovery has been allowed in a direct action by a parent for alienation of the affections of a child, the court formulated a rule of law in terms of the affections of a *minor* child."

*Ames*, 2016 U.S. Dist. LEXIS 166048, at *14 (quoting 60 A.L.R. 3d 931) (emphasis added by court, paragraph indention omitted).

Although this Court has couched Samuel Hall's IIED claim as one of arising from an adult child abducting her mother or forcing her away from another adult child (and has elaborated from the bench that it may include other conduct – whatever that might be), the defendant does not believe that even this conduct is actionable under Virgin Islands law.

LEXIS 124941, at *3-4 (D.V.I. Sept. 8, 2014) (internal brackets omitted) (citing, *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1166 (3d Cir. 1993)).  "The question is not whether there is literally no evidence supporting the unsuccessful party, but whether there is evidence upon which a reasonable jury could properly have found its verdict." *Id*., (internal quotations omitted) (citing *Johnson v. Campbell,* 332 F.3d 199, 204 (3d. Cir. 2003)). "If a verdict in favor of the nonmoving party would necessarily be based upon speculation and conjecture, judgment as a matter of law must be entered in the moving party's favor." *Fontenot v. Taser Int'l, Inc.*, 736 F.3d 318, 332 (4th Cir. 2013) (citation omitted); *accord Cham v. Station Operators, Inc*., 685 F.3d 87, 93 (1st Cir. 2012) ("the plaintiff is not entitled to inferences based on speculation and conjecture." (citation and quotation marks omitted)); *Allen v. Radio One of Tex. II, L.L.C*., 515 Fed. Appx. 295, 301 (5th Cir. 2013) ("While a verdict may be sustained by reasonable inferences' from the evidence as a whole, plainly unreasonable inferences or those which amount to mere speculation or conjecture do not suffice."  (citation and quotation marks omitted)).

## DISCUSSION

**There is insufficient evidence from which a jury could reasonably find that Elsa Hall intentionally inflicted severe emotional distress on Samuel Hall by any conduct, much less abducting Ethlyn Hall or by forcing Ethlyn and Samuel Hall asunder.**

In assessing whether there is a *legally sufficient evidentiary basis* for the jury to find that Samuel Hall suffered severe emotional distress caused by Elsa Hall abducting Ethlyn Hall or by similar intentional conduct forcing Ethlyn and Samuel Hall asunder, it is essential to remain mindful that the jury can only consider forcible abduction or forcible holding asunder conduct by Elsa Hall.  (Order at 20, March 30, 2016, ECF No. 452) (adopting Restatement (Second) of Torts, § 684(1)).

*Hall v. Hall*, Civil No. 3:13-CV-95
Defendant Elsa Hall's Rule 50 Motion for Judgment as a Matter of Law
Page 5

Equally important, the jury cannot consider evidence that Elsa Hall induced or enticed her mother to separate from Samuel Hall or not to return after being separated. (*See id.*) (rejecting IIED claim based on § 684(2)); *see also Restatement (Second) of Torts* §702A cmt. b. ("The Restatement does not set forth a rule for the similar situation in which the defendant compels or induces a parent to leave his . . . child or not to return to it after leaving it.").

The jury also cannot consider evidence of any of Samuel Hall's dismissed claims: that Elsa Hall breached any fiduciary duties (Count One); that Elsa Hall committed any fraud (Count Three); that Elsa Hall was involved in any civil conspiracy or tortiously interfered with Samuel Hall's inheritance rights or relationship with Ethlyn Hall (Count Four); that Elsa Hall converted any property or property rights (Count Five); or that Elsa Hall tortiously interfered with Samuel Hall's relationship with Ethlyn Hall. (Count Nine). (Order at 9-10, ECF No. 452.)

The Court should also remain mindful that the only two parties in this case are the plaintiff, Samuel Hall, and the defendant, Elsa Hall.  Thus, any conduct that may have allegedly harmed other individuals such as Yassin Hall or Diana Hall, is irrelevant and, therefore, not legally sufficient to support the plaintiff's IIED claim.

Viewed in this context, a reasonable jury would not have a legally sufficient evidentiary basis to find for Samuel Hall on his IIED claim predicated on Elsa Hall abducting or forcibly holding Ethlyn Hall and Samuel Hall asunder or any other greater conduct that is distinct from an amatory tort.  Viewing the evidence in a light most favorable to the plaintiff, the evidence merely shows that Samuel Hall (at worst) suffered from a loss of consortium as a result of his mother's move to Hillcrest and, later, Florida.

*Hall v. Hall*, Civil No. 3:13-CV-95
Defendant Elsa Hall's Rule 50 Motion for Judgment as a Matter of Law
Page 6

Samuel Hall testified that after Ethlyn left St. John he was no longer able to "eat with her" or "visit" with her. He also testified that after Ethlyn left for Florida he was no longer able to take her to see the progress that was being made on the construction of Yassin Hall's house. However, the law of the case instructs that any loss of consortium suffered by Samuel Hall is not legally sufficient to support a finding of IIED.

Without belaboring the point, there is no evidence that Elsa Hall abducted her mother or by similar conduct forced her mother and Samuel Hall asunder.  In the absence of such evidence, the jury would be required to speculate that Ethlyn Hall was forced to stay away from Samuel Hall; but the law does not permit such speculation.  *See Fonteno.*, 736 F.3d at 332.

Furthermore, to the extent that the parameters of Samuel Hall's claim are governed by *Miller v. Currie*, 50 F.3d 373 (6th Cir. 1995), relied on by the Court in recognizing the viability of the claim, (Order at 19, ECF No. 452), the evidence is not legally sufficient under *Miller*. In *Miller*, the plaintiff based her IIED claim on allegations that the defendants "were all involved in hiding her mother from her, preventing her from visiting with her mother, and causing her arrest on charges of criminal trespass."  *Id*. at 377.  Initially, it should be noted that *Miller* court decided that case under the outdated *Conley* "no set of facts" standard that placed no limits on facts which might theoretically support a claim. *See id*. at 377 (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) for the proposition that a court should deny a motion to dismiss "unless it is clear that the plaintiff can prove no set of facts in support of her claim that would entitle her to relief.")  In the instant case, the Court must assess the claim based on the relevant evidence presented at trial and not Plaintiff's unsupported theories.

*Hall v. Hall*, Civil No. 3:13-CV-95
Defendant Elsa Hall's Rule 50 Motion for Judgment as a Matter of Law
Page 7

But even considering the allegations in *Miller* at face value, the evidence presented by Samuel Hall is not legally sufficient to sustain his claim.  Even if the evidence showed, *arguendo*, that Elsa Hall hid her mother, Samuel Hall knew where she was as evidenced by Diana's Hall's testimony that she and Sam visited with Ethlyn two days after she moved from Peter Bay to Hillcrest and continued to have contact with her there until Ethlyn moved to Florida. Furthermore, the move from Peter Bay to Hillcrest should have come as no surprise considering that Diana Hall testified that it had been discussed as an option in the past.   With respect to Ethlyn's move to Florida, Diana Hall testified that in March 2011, when Ethlyn was being treated at the Myrah Keating Clinic on St. John, Elsa Hall and Samuel Hall had discussed Ethlyn going to Florida for better medical treatment. Diana Hall dismissed Elsa Hall as "being off her rocker" and testified that Samuel Hall said "Miami is out." On April 24, 2011, when Ethlyn's medical condition finally required Elsa and Ethlyn to move to Florida, Samuel Hall knew full well where Elsa and Ethlyn had gone. Just five days later, on or about April 29, 2011, Samuel Hall filed a guardianship proceeding in Superior Court acknowledging in his petition that Elsa and Ethlyn had moved to Florida. As Samuel Hall testified, at no point after Elsa and Ethlyn Hall moved to Florida did he ever try to visit and there is no evidence that Elsa Hall prevented the plaintiff from visiting her, much less that Elsa caused him to be arrested, as was the case in *Miller.*

It is also important to note that the testimony at trial established that only time police were called against Samuel Hall, was by Phyllis Hall-Brin (not Elsa Hall) when Phyllis suspected Samuel Hall of trespassing at Hillcrest. The only time Elsa Hall called the police was in Florida on October 5, 2011 when Yassin Hall (not Sam Hall) and a Florida Department of Health nurse arrived at their apartment late at night and unannounced.

Plaintiff relies heavily on the 5 nights spent in a hotel after Yassin came to see Ethlyn Hall, but there is no evidence that Sam Hall was trying to see her or came and could not find her.  Thus, there is no evidence that she was "hid" – in fact they got a police escort to the hotel.  And, they came back to the apartment a few days later.  In short, the stay in the hotel was a non-event in terms of Sam Hall's contact with his mother Ethlyn Hall.

Finally, all the evidence concerning Elsa Hall's conduct establishes that it was directed at her mother, and not Samuel Hall.  Indeed, Samuel Hall's theory is that Elsa was driven by greed, and she abducted her mother and concealed her mother in Florida so that she could steal her mother's assets unhindered by the plaintiff.  Plaintiff's opening statement plainly presented this theory:

> Elsa had . . . schemes and the plot to take away the asset that Mrs. Hall had worked so hard to build. . . .   [T]he day would come when Elsa would implement her plan to be sure that Sam, her brother, could no longer hold her at bay.  And the way she did this was to put her mother, against her will, to entice her, to abduct her, to put her on a plane to the State of Florida . . . .

 (Trial Tr. 5:7-17 (opening statement) ECF No. 405. The evidence Samuel Hall has presented at trial was wholly aimed at proving his theory.

Because the plaintiff's theory and his evidence establishes that Elsa's conduct was directed at her mother, and not the plaintiff, he is required to prove in support of his IIED claim that he was present at the time of the conduct.   The IIED claim is governed by the Restatement (Second) of Torts, § 46, that provides in pertinent part: "Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress . . . to a member of such person's immediate family *who is present at the time* . . . ." § 46(a)(2) (emphasis added).  The comments to § 46 make it

palpably clear that the plaintiff's presence is required, notwithstanding the severity of the

conducted at issue:

> Where the extreme and outrageous conduct is directed at a third person, as where, for example, a husband is murdered in the presence of his wife, the actor may know that it is substantially certain, or at least highly probable, that it will cause severe emotional distress to the plaintiff. In such cases the rule of this Section applies. The cases thus far decided, however, have limited such liability to plaintiffs who were present at the time, as distinguished from those who discover later what has occurred.

§ 46, cmt. l.

Inasmuch as the evidence establishes that Elsa Hall's conduct was directed at her

mother and that Samuel Hall was not present when that conduct occurred, there is no legally

sufficient evidence that would allow a reasonable jury to find for the plaintiff and the

defendant is entitled to judgment as a matter of law on this ground as well.

**Plaintiff has not produced sufficient evidence that he actually suffered severe emotional distress**

A plaintiff can only recover on an IIED claim if "emotional distress has in fact

resulted, and where it is severe."  Restatement (Second) of Torts, § 46 cmt. j.  Not all

emotional distress is actionable;

> [i]t is only where it is extreme that the liability arises. Complete emotional tranquillity is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it.

*Id*.

In the instant case, Samuel Hall presented evidence that he due to Elsa Hall's

conduct, he experienced the typical "stages of grief." Specifically, Samuel  Hall testified

that he experienced worry, anger, sadness, stress, and a sleep loss. Diana Hall testified that

she observed that her husband, Samuel Hall, became irritable and distracted. She also

testified that on one occasion during a doctor's visit Samuel Hall's blood pressure was elevated.

These symptoms, however, "cannot properly be characterized as "'so severe that no reasonable person could be expected to endure them." *Illaraza v. Hovensa LL*C, 73 F. Supp. 3d 588, 615 (D.V.I. 2014) (citation and quotation marks omitted).

In fact, the symptoms reported by Samuel Hall are not all that different than those reported by plaintiff in several previous cases before this Court. In *Pemberton Sales & Serv. v. Banco Popular de P.*R., 877 F. Supp. 961, 967 (D.V.I. 1994) the plaintiff reportedly suffered from hypertension, "a lot of stress and sleeplessness" due to the defendant's conduct. The court ruled, however, that

> While such symptoms may be unpleasant, they are not of the type which are so severe that no reasonable person could be expected to endure them. In Alvarez, the plaintiff was fired for theft and brought an action for severe emotional distress against his former employer. The symptoms complained of included elevated blood pressure, frequent headaches, need for medication and stress. The court found that the symptoms were typical of someone who is unemployed and held that they did not establish the severe distress element of the tort. Similarly, Pemberton may indeed suffer from stress, hypertension and loss of sleep. However, such symptoms are typical of those encountered by many persons who constantly have to deal with the demands of a small business; they do not rise to the level of severity demanded by the tort of intentional inflict at emotional distress.

*Id.* (citation and footnote omitted).

Similarly, in *Mendez v. Puerto Rican Int'l Cos., Inc.*, Civ. No. 05-174, 2013 U.S. Dist. LEXIS 147648 (D.V.I. Oct. 8, 2013) the plaintiffs testified "to experiencing symptoms of . . . nervousness, lack of sleep, lack of concentration, and depression." Id. at *55-56. The court found, however, that "[m]any of these symptoms did not last, were not severe enough so that a doctor was consulted, or were not explicitly connected with the [defendant's allegedly tortious conduct]." Id. at *56. Thus, the Court concluded that the

"symptoms fall short of the conduct and distress that have led other courts to permit a claim of IIED to proceed past summary judgment." *Id*.

And, in *Illaraza* the plaintiffs reported experiencing regular headaches, sleeplessness, "stress about how he will pay his bills and meet his obligations to his family," and "anxiety as well as backaches and frequent stomachaches for which he has sought medical attention." The court ruled that, "[a]s in *Pemberton Sales & Service*, these symptoms cannot properly be characterized as 'so severe that no reasonable person could be expected to endure them.' Thus, plaintiffs have not shown the requisite harm for their intentional infliction of emotional distress claims." *Illaraza*, 73 F. Supp. 3d at 615.

**Even if, *arguendo*, there was evidence of severe emotional distress in this case, the plaintiff has not shown that this distress was caused by any actionable conduct by Elsa Hall.**

For Samuel Hall to recover on his IIED claim, he must establish that actionable "extreme and outrageous conduct is a factual cause of [his] severe emotional distress." *Restatement (Third) of Torts, Liability for Physical and Emotional Harm*, § 46, cmt. k. And, "[e]ven though [the court] must draw all legitimate inferences [in Plaintiff's] favor," the inference that any severe emotional distress was caused by Elsa Hall abducting her mother or forcibly holding her asunder from the plaintiff "is not an appropriate inference." *See Fedorczyk v. Caribbean Cruise Lines*, 82 F.3d 69, 75 (3d Cir. 1995). "The possibility of the existence of an event does not tend to prove its probability." I*d*. The point here is that Samuel Hall cannot rely on speculation or conjecture to establish this causal connection. *See Fonteno.*, 736 F.3d at 332; see also *Cape Air Int'l v. Lindsey*, 53 V.I. 604, 622 (VI. 2010) ("the Superior Court's assignment of liability was based on speculation that Cape Air's negligent conduct caused the loss and rendered Cape Air an insurer of the

baggage, which the law forbids"); *Mill Harbour Condo. Owner's Ass'n v. Marsh*all, 53 V.I. 581, 587 (VI. 2010) (*citing Saelzler v. Advanced Group 400*, P.3d 1143, 1151 (2001) for ruling that "'proof of causation cannot be based on mere speculation, conjecture and inferences drawn from other inferences to reach a conclusion unsupported by any real evidence.'")).

The evidence shows that there are numerous possible causes of Samuel Hall's asserted emotional distress; none of which are actionable.  As discussed above, the most likely cause of Samuel Hall's emotional distress is rooted in the loss of his mother's love, companionship, affection and guidance. Another possible cause of Samuel Hall's emotional distress comes from his own conduct. When Ethlyn Hall moved to Florida he never attempted to call her, or visit her, or email her. Despite knowing that Tanya Muldrow, who was in contact with Ethlyn Hall during this time, could get him in touch with his mother he never asked Tanya for Ethlyn's address and phone number. Instead, he surreptitiously hired a private investigator to find Elsa and Ethlyn's address to serve them with a lawsuit.  Samuel Hall testified that even after he learned Ethlyn Hall's exact address he chose not to visit her. While he may experience deep regret over his choice, Samuel Hall's self-inflicted emotional distress is not actionable and cannot be attributed to Elsa Hall.

Even viewing the evidence in a light most favorable to the plaintiff, it is not clear how the jury could determine whether and to what extent the alleged abduction or forcibly holding asunder, as distinct from other factors, caused Samuel Hall to suffer severe emotional distress.  The court in *Halcomb v. Woods*, 610 F. Supp. 2d 77 (D.D.C. 2009) was confronted by similar circumstances and granted judgment as a matter of law to the

*Hall v. Hall*, Civil No. 3:13-CV-95
Defendant Elsa Hall's Rule 50 Motion for Judgment as a Matter of Law
Page 13

defendant because the jury would have been required to speculate as to the causal link between the defendants' actionable conduct and the plaintiff's emotional distress.   As explained by the court,

> the emotional distress Ms. Halcomb suffered after her arrest and detention was, like the emotional distress in Baltimore, multifactorial and highly complicated.  It was multifactorial because it was potentially traceable to at least three different sources: (1) the alleged acts of Officer Woods; (2) the alleged acts of MPD officers; and (3) an employment discrimination suit that Ms. Halcomb filed prior to her arrest and detention.  It was complicated because it manifested itself in a variety of ways, including:  specific anxieties; insomnia; weight loss; uncontrollable weeping; loss of religious faith; and social withdrawal.  Because of the complex and multifactorial nature of her emotional distress, Ms. Halcomb was required to offer expert testimony to ensure that the jury was not left to speculate as to its cause or causes.

*Id.* at 85-86 (citations, quotation marks and footnote omitted).

The court ruled that "[e]xpert testimony is necessary in such cases to prevent the jury from engaging in speculation as to whether and to what extent the allegedly unlawful acts at issue -- as distinct from other potential factors -- caused plaintiff's harm." Id. at 85 (citations, quotation marks and brackets omitted).

Similarly, in this case the evidence established that there were several potential factors that could have caused Samuel Hall's alleged emotional distress.   Without speculating, it is impossible to discern how the jury could determine whether and to what extent Elsa Hall's actionable conduct at issue, as distinct from the other factors presented by the evidence caused Samuel Hall's harm.  As in *Halcomb*, this fatal deficiency renders the plaintiff's evidence insufficient and Elsa Hall is entitled to judgment as a matter of law. *See id.* at 87.

**Elsa Hall is entitled to judgment as a matter of law on Samuel Hall's claim for punitive damages because the plaintiff waived the claim and there is insufficient evidence to support the underlying IIED claim and because there is not clear and**

**convincing evidence that Elsa Hall abducted her mother or by similar conduct forced her mother and plaintiff asunder with an evil motive or reckless indifference.**

Before discussing the absence of legally sufficient evidence upon which a reasonable jury could award punitive damages, it is necessary to address the fact that punitive damages should not even be considered in the retrial of this case. Elsa Hall moved for judgment as a matter of law on punitive damages following the first trial because Plaintiff had not pled punitive damages as relief for his IIED claim in his Complaint (Am. Compl. ¶¶ 212-226; ECF No. 152-1) or mentioned them in his Statement of Damages in the parties' Joint Pre-Trial Order. (Joint Final Pretrial Order, §§ 4 and 12 (Statements of Damages), ECF No. 211. Plaintiff likewise did not request a jury instruction on punitive damages, and the defendant was thus totally surprised when the Court included a charge authorizing punitive damages in its jury instructions.

The Court did not rule on Elsa Hall's argument in her Motion for Judgment as a Matter of Law that it was error to submit the issue of punitive damages to the jury. (Order, 22 n. 6, ECF No. 452) (stating: "[g]iven the Court's ruling, the Court need not address . . . Elsa Hall's argument that she is entitled to judgment as a matter of law with respect to punitive damages . . . . ). But Plaintiff does not start this trial with a clean slate and a new opportunity to cure his fatal deficiency of never apprising the defendant that he was seeking punitive damages. "[T]he order granting the new trial has the effect of vacating the former judgment, and to render it null and void, and the parties are left in the same situation as if no trial had ever taken place in the cause." *United States v. Ayres*, 76 U.S. 608, 610 (U.S. 1869); *accord Allegheny County v. Maryland Casualty Co.*, 132 F.2d 894, 896 (3d Cir. 1943) (same).

Because Plaintiff had never even hinted that he was seeking punitive damages for his IIED claim in the first trial, a deficiency which should have barred jury consideration of the issue, and the parties are left in the same situation on retrial, he is barred from seeking punitive damages at this trial. *See Seibert v. Nusbaum, Stein, Goldstein, Bronstein & Compeau, P.A.*, 167 F.3d 166, 171 (3d Cir. 1999) ("A plaintiff cannot pursue a claim for punitive damages where, as here, no hint of such a claim was contained in the pleadings or the pretrial order."); *Price v. Inland Oil Co.*, 646 F.2d 90, 95 (3d Cir. 1981) (the scope of a case will be limited by the trial court itself in a pre-trial order. Under F.R.Civ.P. 16, the trial court may conduct pre-trial conferences and simplify in a pre-trial order the issues to be presented at trial. This order then supersedes the pleadings and directs the future course of the action. Theories of liability not raised pre-trial may be considered dropped from the case.); *Draft Systems, Inc. v. Alspach*, 756 F.2d 293, 299 (3d Cir. 1985) ("the rationale of avoiding unfair surprise applies equally well to damages."); *Northeast Women's Center, Inc. v. McMonagle*, 868 F.2d 1342, 1356 (3d Cir. 1989) (affirming district court's j.n.o.v. ruling that it should not have charged the jury on punitive damages due to the plaintiff's "failure to mention punitive damages in its pretrial memorandum as it was required to do under a local rule; the [plaintiff's] failure to object to the court's pretrial order specifying the damage elements in the case, which did not include punitive damages; [and] the [plaintiff's] untimely request for a charge on punitive damages . . . ."); *Olson v. Shinnihon Kisen K. K.*, 25 F.R.D. 7, 9 (E.D. Pa. 1960) ("The Pre-trial Order entered makes no reference to any claim for punitive damages and, in the opinion of the Court, it would prostitute our pre-trial procedures if after pre-trial and the issues have been settled, the

plaintiff could then assert a further claim not in contemplation by either party or the Court at the time the pre-trial order was entered . . "").

Even if Plaintiff had not waived any claim to punitive damages on his IIED claim, and he did, the Court should grant judgment as a matter of law on the issue for two reasons. First, as discussed above, Plaintiff has not presented a legally sufficient evidentiary basis for the jury to find the defendant culpable on plaintiff's IIED claim.  And, because "a punitive damages claim cannot stand alone," *Dadgostar v. St. Croix Fin. Ctr., Inc*., NO.: 1:10-cv-00028, 2011 U.S. Dist. LEXIS 106278, at *43 n.14 (D.V.I. Sept. 19, 2011), the issue of punitive damages falls with the IIED claim.

Second, Plaintiff has not satisfied the extremely high burden of proof required to present the issue of punitive damages to the jury.  Although the Supreme Court of the Virgin Islands does not appear to have addressed which common law rule governs punitive damages in the territory, the Superior Court has ruled in at least two cases that an analysis under *Banks v. Int'l Rental & Leasing Corp*., 55 V.I. 967 (V.I. 2011), supports adopting Restatement (Second) of Torts § 908 as the common law of the Virgin Islands.  *See Isaac v. Crichlow*, Civ. No. SX-12-CV-065, 2015 V.I. LEXIS 15, at *41 n. 13 (V.I. Super. Ct. Feb. 10, 2015); *Powell v. Chi-Co's Distrib*., No. ST-13-TOR-14, 2014 V.I. LEXIS 21, at *8-9 (V.I. Super. Ct. Apr. 3, 2014).

Under § 908, "[p]unitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." The comments to § 908  elaborate that "[s]ince the purpose of punitive damages is not compensation of the plaintiff but punishment of the defendant and deterrence, these damages can be awarded only for conduct for which this remedy is appropriate -- which is

to say, conduct involving some element of outrage similar to that usually found in crime."

§ 908 cmt. b.

     This Court has expounded on the extremely high burden required for a jury to award

punitive damages:

> Plaintiff must meet an extremely high burden of proof to establish entitlement to punitive damages.  Under Virgin Islands law, in order to be eligible for punitive damages, the plaintiff is required to show that the acts complained of were outrageous, done with evil motive or reckless indifference to the plaintiff's rights.  In addition, these criteria must be met by a showing of clear and convincing evidence.

*Thomas Hyll Funeral Home v. Bradford*, 233 F. Supp. 2d 704, 713 (D.V.I. 2002)

(citations, quotation marks and brackets omitted).

     Both the Virgin Islands Supreme Court and the Court of Appeals for the Third

Circuit have defined "clear and convincing evidence" as "'evidence indicating that the

thing to be proved is highly probable or reasonably certain'" *Browne v. People of the Virgin

Islands*, 50 V.I. 241, 265 (V.I. 2008) (quoting *Black's Law Dictionary* 596 (8th ed. 2004));

*accord In re Fosamax Alendronate Sodium Prods. Liab. Litig*., Nos. 14-1900, 2017 U.S.

App. LEXIS 5075, at *35 (3d Cir. N.J. Mar. 22, 2017).  Utilizing the same definition, the

United States Supreme Court has explained that clear and convincing evidence should

"place in the ultimate factfinder an abiding conviction that the truth of its factual

contentions are highly probable." *Colorado v. New Mexico*, 467 U.S. 310, 316 (U.S. 1984)

(citation and quotation marks omitted); *accord  Miller v. DOJ*, 842 F.3d 1252, 1257-58

(Fed. Cir. 2016) ("Clear and convincing' evidence has been described as evidence which

produces in the mind of the trier of fact an abiding conviction that the truth of a factual

contention is 'highly probable." (Citation and quotation marks omitted)); *Beitel v. OCA,

Inc. (In re OCA, Inc.)*, 551 F.3d 359 (5th Cir. 2008) (same).

Thus, in analyzing whether a reasonable jury would have a legally sufficient evidentiary basis to award punitive damages under the extremely high burden of proof utilized in the Virgin Islands, the Court must conduct this inquiry under the clear and convincing evidence standard.  *See Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1221 (11th Cir. 2010) ("In this case, the clear and convincing standard of proof required under § 768.72 is determinative. Although sufficient evidence was presented to place the issues of probable cause and advice of counsel before the jury, the closeness of those issues confirms that the evidence is insufficient to allow a reasonable juror to find by the clear and convincing standard that Dow could be liable for punitive damages. That being the case, it was not error for the district court to grant Dow's Rule 50(a) motion on that issue.").

The evidence in this case does not meet this standard.  The plaintiff has not presented evidence that would give a reasonable jury an abiding conviction that it is highly probable or reasonably certain that Elsa Hall abducted her mother or forced her asunder from plaintiff with evil motive or reckless indifference to the plaintiff.   Even if the Court were to find that the evidence was close, such a finding would be "insufficient to allow a reasonable juror to find by the clear and convincing standard that [Elsa Hall] could be liable for punitive damages."  *Mee Indus.*, 608 F.3d at 1221.

**CONCLUSION**

As stated above, judgment as a matter of law pursuant to Rule 50 should be granted "if, viewing the evidence in the light most favorable to the nonmovant and giving the nonmovant the advantage of every fair and reasonable inference, there is insufficient evidence from which a jury reasonably could find liability." *Smith v. Katz,* Civil No. 2010-39, 2014 U.S. Dist. LEXIS 124941, at *3-4 (D.V.I. Sept. 8, 2014) (internal brackets

omitted) (citing, *Lightning Lube, Inc. v. Witco Corp.,* 4 F.3d 1153, 1166 (3d Cir. 1993)).

Based on the evidence adduced at trial there is insufficient evidence from which a jury could reasonably find that Elsa Hall intentionally inflicted severe emotional distress on Samuel Hall by abducting Ethlyn Hall or by similar intentional conduct forcing Ethlyn and Samuel Hall asunder or any greater conduct.  Furthermore, there is insufficient evidence from which a jury could reasonably find the plaintiff actually suffered severe emotional distress.  In fact, there is insufficient evidence from which a jury could reasonably find any emotional distress suffered by Plaintiff was caused by actionable conduct of the defendant.  Finally, because Plaintiff withdrew the issue of punitive damages in the first trial and there is not clear and convincing evidence from which a jury could reasonable award punitive damages at the retrial, Elsa Hall is entitled to judgment as a matter of law on punitive damages.

Accordingly, Defendant Elsa Hall respectfully requests that this Court grant her motion for judgment as a matter of law.

Respectfully submitted,

Beckstedt & Associates
Attorneys for Elsa Hall
2162 Church Street
Christiansted, VI 00820-4604

Dated:  April 6, 2017          By:    /s/ Carl A. Beckstedt III, Esq.
                                      Carl A. Beckstedt III, Esq.
                                      Virgin Islands Bar No. 684
                                      carl@Beckstedtlaw.com

*Hall v. Hall*, Civil No. 3:13-CV-95
Defendant Elsa Hall's Rule 50 Motion for Judgment as a Matter of Law
Page 20

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 6, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing to the following:

Samuel J. Hall, Jr.
Marie E. Thomas Griffith
Hall & Griffith, P.C.
P.O. Box 305587
St. Thomas, VI  00803-5587
marie@hallgriffith.com

   /s/   Carl A. Beckstedt III, Esq.
Carl A. Beckstedt III, Esq.